**William H. BURSTEIN, M.D., et al.**

v.

**RETIREMENT ACCOUNT PLAN FOR EMPLOYEES OF ALLEGHENY HEALTH EDUCATION AND RESEARCH FOUNDATION, et al.**

No. 98–6768.

United States District Court, E.D. Pennsylvania.

May 30, 2002.

Scott L. Adkins, Meager & Flom LLP, Wilmington, DE, Eric M. Davis, Skadden Arps Slate Meagher, Wilmington, DE, Jonathan Frank, Skadden Arps Slate Meagher, New York City, for W.P. Snyder, III.

Kristin L. Anders, Robert L. Byer, William T. Cullen, David L. Mc Clenahan, Wendy E. Smith, Kirkpatrick & Lockhart, LLP, Pittsburgh, PA, for David W. Sculley.

Jay H. Calvert, Jr., Joseph B.G. Fay, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Mellon Bank, N.A.

Sara B. Eagle, Stanley M. Hecht, Pension Ben., Guaranty Corp., Washington, DC, for Pension Benefit Guaranty Corp.

Kevin K. Douglass, K, Mark Hall, David J. Laurent, Amy L. Wetterau, Babst, Calland, Clements and Zomnir, Pittsburgh, PA, Laurence Leland Smith, Neil A. Morris Associates PC, Philadelphia, PA, for David C. McConnel.

Jay W. Eisenhofer, Sidney S. Liebesman, C. Curtis Staropoli, Grant & Eisenhofer, PA, Wilmington, DE, for Efrain J. Crespo.

Thomas J. Farrell, Stephen R. Kaufman, Frederick W. Thieman, Thieman & Kaufman, Pittsburgh, for J. David Barnes.

Mark A. Fink, Skadden Arps Slate, Wilmington, DE, for Mark A. Fink.

Kristofor T. Henning, John F. Schultz, Drinker Biddle and Reath LLP, Philadelphia, PA, for Dwight Kasperbauer.

Courtney C.T. Horrigan, Perry A. Napolitano, James J. Restivo, Jr., Reed, Smith, Shaw & Mc Clay, Pittsburgh, PA, for Frank V. Cahouet.

Michele Langer, Marvin Larsson Henkin & Scheuritzel, Philadelphia, PA, for Ralph W. Brenner.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Dr. William H. Burstein and four other individuals brought this action on behalf of

a putative class of plaintiffs, all of whom were employed for less than five years by Allegheny Health Education and Research Foundation (AHERF). Presently before the court are: plaintiffs' motion to file a second amended complaint; motions to dismiss the first amended complaint filed by defendants Mellon Bank, N.A., Dwight Kasperbauer, certain trustees of AHERF, Pension Benefit Guaranty Corporation (PBGC), Frank V. Cahouet, David C. McConnell, Ralph W. Brenner, David J. Barnes and W. P. Snyder III; plaintiffs' motion for class certification; and the various replies, responses and oppositions. For the reasons set forth below, the motion to amend will be denied as futile, the motions to dismiss will be granted, and the motion for class certification will be denied as moot.

## I. BACKGROUND

AHERF is a non-profit corporation that, along with its non-profit and for-profit affiliates, operated hospitals, physician practices and a medical school in Pennsylvania. AHERF was the sole member of the non-profit entities and the sole shareholder of the for-profit entities within its system. Through its Retirement Account Plan (the "Plan"), AHERF made certain retirement [*6] benefits available to qualified employees within its system. The Plan was partially terminated by operation of law when AHERF filed for bankruptcy in July 1998.

Plaintiffs are five current and former AHERF employees who participated in the Plan from August 1993 through July 1998. They claim to have been misled by some of these defendants' (1) alleged mis-representations concerning the accrual of benefits under the Plan and the effects of a plan termination on their benefits, and (2) the alleged failure to warn of AHERF's financial condition and the likelihood of a partial Plan termination. Plaintiffs also assert that some of these defendants mismanaged Plan assets.

AHERF was the plan's sponsor. Defendants include, inter alia: Dwight D.Kasperbauer, Executive Vice President and Chief of Human Resources of AHERF; David C. McConnell, Executive Vice President, Chief Financial Officer and Treasurer of AHERF; Frank V. Cahouet, a member of AHERF's Board of Trustees as well as President and Chief Executive Officer of Mellon; David J. Barnes, a member of AHERF's Board of Trustees as well as a director and former Chairman of Mellon; Ira J. Gumberg, a member of AHERF's Board of Trustees and Mellon's Board of Directors; William F.Adam, a member of AHERF's Board of Trustees and Executive Vice President of Mellon Bond Associates, the investment manager of the AHERF Non–Pension Master Trust; Robert L.Fletcher, a member of AHERF's Board of Trustees and a retired executive of Mellon; Ralph W. Brenner, a member of AHERF's Board of Trustees; W.P. Snyder III, Chairman of AHERF's Board of Trustees; certain other members of AHERF's Board of Trustees [1]; Mellon Bank, N.A. ("Mellon"), Master Trustee of the Plan's assets; and PBGC, a government corporation established pursuant to Title IV of the Employment Retirement Income

---

1. These other members of AHERF's Board of Trustees include: Dorothy McKenna Brown; Douglas D. Danforth; Ronald R. Davenport; Harry H. Edelman III; Robert M. Hernandez; Francis B. Nimick; Robert B. Palmer; and David. W. Scully. The proposed amended complaint seeks to add as a defendant AHERF trustee Alfred W. Martinelli. Each of these persons served on AHERF's Board of Trustees in the months immediately prior to and immediately following July 1998. Except where otherwise noted, the court will use the term "AHERF Trustees" to refer collectively to these persons as well as defendants Cahouet, Barnes, Gumberg, Adam, Fletcher, Brenner and Snyder.

Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

Certain facts appear not to be in dispute. When plaintiffs commenced their employment with AHERF, Kasperbauer, the Plan Administrator, provided them with certain documents containing information about the Plan. Plaintiffs received a brochure entitled "A Healthy Financial Future, Your Retirement Program" (the "Plan Brochure"). Some plaintiffs also received the Summary Plan Description ("SPD"). AHERF also distributed "personalized retirement statements" to its employees describing the status of employee retirement "accounts."

Beginning in mid–1997, AHERF began experiencing serious financial difficulties, forcing it to close one of its hospitals and eliminate or lay off about 1,700 employees. In April 1998, AHERF announced that it would lose $200 million in fiscal year 1998. At the same time that AHERF was experiencing these financial problems, the Board of Trustees approved an $89 million payment to Mellon on a line of credit. Finally, on July 21, 1998, numerous members of the AHERF system filed a Chapter 11 voluntary bankruptcy petition in the United States District Court for the Western District of Pennsylvania. PBGC took over the Plan in September 1998 after being appointed statutory trustee under 29 U.S.C. § 1342(c). In November 1998, Tenet Healthcare Corporation purchased AHERF's Philadelphia area hospitals, resulting in partial termination of the Plan as a matter of law. As a result of the partial termination, Kasperbauer sent letters to plaintiffs informing them that the Plan had partially terminated and that because the benefits of employees with less than five years of service were not funded, these plaintiffs—all of whom by definition had less than five years of service—were not entitled to any benefits under the Plan. (Amended Compl. Ex. D.)

According to plaintiffs, they are entitled to Plan benefits under the terms of the Plan, the Plan Brochure and the SPD. They allege that the Plan Brochure and the SPD contain numerous misrepresentations and omissions designed to lead employees such as these plaintiffs to believe that they were entitled to the value of their retirement "accounts" as reflected in their personalized account statements, upon a partial termination of the Plan. Further, plaintiffs allege that they were damaged as a result of the defendants' mismanagement of Plan assets.

Plaintiffs' First Amended Complaint, filed August 10, 2000, contains five counts: (1) breach of fiduciary duty and (2) equitable estoppel against Kasperbauer; (3) breach of fiduciary duties against Kasperbauer, McConnell, Mellon and the AHERF Trustees; (4) entitlement to Plan benefits; and (5) entitlement to attorney's fees and costs under 29 U.S.C. § 1132(g). (First Amended Compl. at 29–32.) Partly in response to arguments raised by the defendants in their various motions to dismiss, Plaintiffs filed a motion for leave to file a second amended complaint on April 27, 2001, attaching the proposed amendment. On that same day, plaintiffs filed a motion for class certification. Plaintiffs' proposed Second Amended Complaint contains essentially the same allegations and causes of action that are asserted in the First Amended Complaint, although some of those causes of action name defendants against whom those claims were not asserted in the First Amended Complaint.

The proposed Second Amended Complaint contains eleven counts: (I) breach of fiduciary duties through misrepresentation against Kasperbauer, McConnell and the AHERF Trustees; (II) breach of fiduciary duties for failure to disclose material information against Kasperbauer, McConnell, Mellon and the AHERF Trustees; (III)

breach of fiduciary duties for mismanagement of Plan assets against Kasperbauer, McConnell and the AHERF Trustees; (IV) breach of fiduciary duties for mismanagement of Plan assets against Mellon; (V) breach of fiduciary duties for mismanagement of Plan assets against Cahouet, Barnes, Gumberg, Adam and Fletcher, all of whom were members of both AHERF's Board of Trustees and current or former Mellon directors or employees; (VI) equitable estoppel against Kasperbauer, McConnell and the AHERF Trustees; (VII) a claim for Plan benefits (not asserted against any particular defendant); (VIII) a claim for Plan benefits against PBGC; (IX) a claim for payment of insured benefits against PBGC; (X) a claim against PBGC for failure to pay benefits for which premiums were collected; and (XI) a claim for attorney's fees and costs under 29 U.S.C. § 1132(g). (Mot. for Leave to File Second Amended Compl. Ex. A.) In their prayer for relief, plaintiffs request, inter alia: a full accounting of the losses sustained by the plan as a result of the breaches of fiduciary duties; that the court declare that Kasperbauer, McConnell and the AHERF Trustees are estopped from interpreting or enforcing the Plan in any manner other than in accordance with the Plan Brochure and the SPD; restitution to the Plan and to plaintiffs from Kasperbauer, McConnell, Mellon and the Trustee defendants for losses sustained by the Plan as a result their conduct; that PBGC pay plaintiffs the full value of their accounts; damages from Kasperbauer, McConnell, Mellon and the Trustee defendants resulting from their breaches of fiduciary duties; and costs and attorneys' fees from Kasperbauer, McConnell, Mellon and the Trustee defendants.

## II. *LEGAL STANDARD*

■ Leave to amend should be freely given when justice so requires. Fed. R.Civ.P. 15(a). However, leave to amend may be denied where there exists undue delay, bad faith, dilatory motive, prejudice or futility. *United States v. Duffus,* 174 F.3d 333, 337 (3d Cir.1999) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Futility is governed by the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). *Oran v. Stafford,* 226 F.3d 275, 291 (3d Cir.2000) (internal quotations and citations omitted). Thus, futility exists if the proposed amendment would not survive a motion to dismiss.

■ For the purposes of a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in a plaintiff's complaint, construe the complaint in the light most favorable to the plaintiff, and determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988). The court may also consider "matters of public record, orders, exhibits attached to the Complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir.1994) (citations omitted). The court, however, need not accept as true legal conclusions or unwarranted factual inferences. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (citations omitted). A complaint is properly dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Although generally the court should not consider matters extraneous to the pleadings, " 'a document integral to or explicitly relied upon in the complaint' may be considered 'without converting the mo-

tion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996)). Thus, the court may consider an undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiffs' claims are based on the document. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) (citations omitted). Otherwise, plaintiffs with legally deficient claims could survive a motion to dismiss merely by failing to attach a dispositive document on which the claims in the complaint rely. *Id.* (citation omitted).

## III. *DISCUSSION*

We will first discuss the documents upon which plaintiffs base their claims and the general legal principles and caselaw applicable to the instant dispute. We will then address each of plaintiffs' claims, along with the caselaw specifically applicable to each claim. Because resolution of plaintiffs' claims of equitable estoppel and for benefits under the Plan—Counts VI through X—may influence the court's decision with regard to the other counts of the proposed Second Amended Complaint, we will address those claims immediately after discussing the documents upon which plaintiffs base their claims. Also, because the claims of equitable estoppel and for Plan benefits are closely related, we will address them together. The court will then address the remainder of plaintiffs' claims.

### A. *Documents Upon Which Plaintiffs Base Their Claims*

The plaintiffs' claims depend largely, if not wholly, on the Plan instrument, the Plan Brochure, the SPD and the Master Trust Agreement between Mellon and AHERF.

### 1. The AHERF Plan

The Plan is a type of defined benefit plan funded solely by contributions from AHERF, rather than employee contributions. A defined benefit plan is a plan under which an employee is entitled to a fixed periodic payment according to the plan's terms. 29 U.S.C. § 1002(35).[2] Those benefits are funded from a trust that holds all of the plan's assets. Contributions to the trust are calculated using actuarial assumptions that project the amount of assets necessary to fund the plan. § 1082.

ERISA distinguishes a defined benefit plan from a "defined contribution" plan.[3] §§ 1002(34) & (35). A defined contribution plan, rather than providing retired employees with defined periodic payments as a defined benefit plan does, provides an individual account for each plan participant and bases benefits solely upon the amount contributed to a particular participant's account and any income, expenses, gains, losses or forfeitures of accounts of other participants that are allocated to that particular participant's account. § 1002(34).

Under the traditional form of a defined benefit plan, an employee would be credited with a specific percentage of salary for each year of employment. *Esden v. Bank of Boston*, 229 F.3d 154, 158 (2nd Cir.2000) (describing operation of defined benefit plans). However, the AHERF Plan is a "cash balance" defined benefit plan, under which a *hypothetical* account is established in each participant's name. *Id.* Like the plan at issue in *Esden*, benefits are credited to the hypothetical account

---

**2.** All statutory citations are to Title 29, U.S.C., unless otherwise noted.

**3.** Defined contribution plans are also known as "individual account" plans. *Id.* §§ 1002(34).

over time, driven by two variables: (1) the employer's hypothetical contributions; and (2) hypothetical earnings expressed as interest credits. *Id.* Because the accounts are hypothetical, they are merely an attempt to quantify the present value of participants' plan benefits. *Id.* Annual statements are distributed to employees, apprizing them of the present value of their benefits through the hypothetical account balance. *Id.* The actual assets of the Plan, however, remain in the Plan's trust and are drawn upon to pay the benefits of all participants.

AHERF employees automatically became Plan participants after meeting the Plan's age and service criteria. The Plan provides that an employee becomes "vested," i.e., entitled to benefits, after having reached normal retirement age or completed five years of service with AHERF. Of particular importance to the instant motions, the Plan also provides that:

> Upon ... partial termination of the Plan, the rights of all affected participants accrued to the date of such ... partial termination shall become nonforfeitable [i.e., vested] ... to the extent funded as of such date.

(Kasperbauer Mot. to Dismiss Ex. A. § 16.2.) Plaintiffs appear to assert that this provision entitles them the value of Plan benefits as reflected in their personal account statements as of the date of partial termination. (Proposed Second Amended Compl. ¶¶ 187–189.)

Subject to certain limitations, some, but not all, vested benefits under the Plan were insured by PBGC in the event of Plan termination.

Importantly, because the Plan was a defined benefit plan, AHERF was not required to fully fund it on a termination basis. *See generally* 26 U.S.C. §§ 404 & 412; 29 U.S.C. § 1082 (providing ERISA minimum funding standards). Rather, pursuant to the minimal requirements for a defined benefit plan, AHERF only funded the Plan on an ongoing basis, meaning that it was only funded sufficient to make benefit payments as they became due. This also meant, however, that the Plan did not have sufficient assets to pay all benefits upon partial termination. Because Plan benefits were paid out in accordance with the priority scheme provided by ERISA's regulations, under which these plaintiffs' benefits had the lowest priority, the Plan assets were exhausted before plaintiffs' benefits were due to be paid. *See* § 1344; 29 C.F.R. §§ 4044.10–4044.16 (setting forth priority in which Plan benefits must be paid). Plaintiffs do not appear to dispute that the partial termination of the Plan, the level of funding and the distribution of assets complied with the Plan terms and ERISA.

### 2. The Summary Plan Description

As its name connotes, the SPD summarized the operation of the Plan for the employees. Reflecting the Plan's terms, it stated that the Plan is a defined benefit plan and that employees become fully vested and "own" their account after having earned at least five years of service. (First Amended Compl. Ex. B at 6, 12, 14 & 36.) As Plaintiffs concede, the SPD also "clarifies that the participant accounts are hypothetical." (Resp. to Kasperbauer's Mot. to Dismiss at 11.) It goes on to state that "[w]hile your account balance ... is a way of expressing your plan benefit, no plan assets are specifically allocated to your plan account. Instead, they are held in trust for all participants." (Amended Compl. Ex. B. at 1.) With regard to termination of the Plan, the 1997 SPD stated that "[i]f the plan is terminated you will automatically become vested in your account, regardless of how many years of service you earned." *Id.* Ex. B. at 25. However, it did not, like the Plan itself, specifically state that employees were only

vested to the extent that their benefits were funded as of the date of partial termination. The 1997 SPD did not explicitly address the subject of partial termination.

The SPD addressed the role of PBGC as insurer, but cautioned that PBGC does not cover all types of benefits covered under the Plan and that the amount of benefit protection was subject to certain limitations. *Id.* Ex. B at 24–25. It also stated that PBGC guarantees vested benefits at the level in effect as of the date of termination, and directed participants to ask the Plan administrator or the PBGC specific questions that they may have regarding PBGC insurance protection. *Id.*

### 3. The Plan Brochure

Consistent with the nature of a cash balance plan, the Plan Brochure refers to participants' benefits throughout as "accounts," noting that "AHERF contributes to your account each year" and that "[y]our account earns interest at a guaranteed annual rate." *Id.* Ex. A at unnumbered p.3. It goes on to state that "[y]ou have your own interest bearing account that is completely funded .... Each year, AHERF makes a contribution to your account based on a percentage of your pay." *Id.* Ex. A at unnumbered p.5. The Plan Brochure does not discuss the effect of a termination or partial termination on participants' benefits. Lastly, the Plan Brochure points out that it is only a summary of the formal plan documents and that if there is any difference between the summary and those documents, the documents control. *Id.* Ex. A at unnumbered p.16.

### 4. The Master Trust Agreement

In 1988, Mellon and Allegheny General Hospital ("AGH"), the entity that AHERF later succeeded as Plan sponsor,[4] entered

into a Master Trust Agreement (the "Agreement") pursuant to which Mellon agreed to hold and invest Plan assets, and to withdraw, transfer and make payments from those funds in accordance with the sponsor's instructions. *See generally* Mellon Mot. to Dismiss Ex. C. Mellon assumed certain fiduciary duties established by the Agreement. *Id.* Ex. C § 12.1. Those duties included the appointment of agents as to all or part of the Plan's funds and functions incident thereto, causing any investment to be registered in or transferred into Mellon's name or the name of its nominee and the following powers upon which Plaintiffs' allegations focus:

7.2 The Master Trustee shall have the following powers . . . to be exercised in its sole discretion with respect to the Fund: . . .

(f) to establish and maintain such separate accounts in accordance with the instructions of an administrator or . . . as determined to be necessary by the Master Trustee.

(g) to generally take all action, whether or not expressly authorized, which the Master Trustee may deem necessary or desirable for the protection of the Fund. . . .

8.1 *Master Trustee Granted Discretion.* The Master Trustee is hereby granted any and all discretionary powers *not* explicitly *or* implicitly conferred by this Agreement which it may deem necessary and proper for the protection of the property held hereunder. . . .

(Mellon Mot. to Dismiss Ex. C §§ 7.2(f) & (g), 8.1) The Agreement also permits Mellon to provide ancillary services. *Id.* Ex. C § 9.2. The Agreement obligates Mellon to make payments out of Plan assets only as directed by the Plan Administrator, and

---

4. AHERF succeeded AGH in 1995. The Agreement was amended in 1996 to substitute AHERF for AGH.

only authorizes Mellon to execute such agreements, receipts and releases as required by the Named Fiduciary with respect to the transfer of any Plan assets to or from an Investment Manager. *Id.* Ex. C §§ 4.1 & 5.4(c). The Agreement divests Mellon of the duties of determining the accuracy or sufficiency of contributions to be made under the Plan and administering, managing or controlling the assets of the Plan in any respect. *Id.* Ex. C §§ 2.2, 3.1 & 5.1(a). Specifically, the Agreement states that the Plan Administrator "shall have the sole fiduciary duty to such plan administration and the Master Trustee shall not be responsible in any respect for such administration." *Id.* Ex. C § 3.1.

### B. *Counts VI—X: Equitable Estoppel & Claims for Benefits*

Count VI of the proposed Second Amended Complaint asserts a claim of equitable estoppel. In Counts VII through X, plaintiffs assert claims for benefits under the Plan but do not specify the causes of action under which the claims are brought. The court is aware of only two causes of action recognized in this Circuit that would permit plaintiffs to recover Plan benefits.

■ First, Congress created a statutory cause of action in 29 U.S.C. § 1132(a)(1)(B), which authorizes a beneficiary to receive benefits due under the terms of a plan. Claims for benefits under § 1132(a)(1)(B) are determined by the explicit terms of the plan's formal governing instrument. *See Crane v. Asbestos Work-*

*ers Phila. Pension Plan,* Civ. No. 95–4173, 1998 WL 151801, *3 n. 8, 1998 U.S. Dist. LEXIS 4293, at * 10 n. 8 (E.D.Pa. Apr. 1, 1998) (stating that it is clearly established in this circuit that claim for benefits under § 1132(a)(1)(B) is governed by plan's formal governing instrument rather than SPD) (citing *Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1318 (3d Cir. 1991)). Thus, under § 1132(a)(1)(B), employees cannot recover from the Plan benefits which are allegedly granted or due under a summary plan description or other secondary document. *Gridley,* 924 F.2d at 1318; *Crane,* 1998 WL 151801, *3, n. 8, 1998 U.S. Dist. LEXIS 4293, at * 10 n. 8.

■ Second, pursuant to § 1132(a)(3)(B) "[l]anguage in an SPD may be given effect over conflicting language in a plan only if a plaintiff can establish a claim for equitable estoppel based on his reliance on misleading language in the SPD and, even then, a plaintiff must demonstrate 'extraordinary circumstances' to recover benefits on such a claim." *Crane,* 1998 WL 151801, *3, n. 8, 1998 U.S. Dist. LEXIS 4293, at * 10 n. 8 (citing *Gridley,* 924 F.2d at 1319). Because plaintiffs assert a claim for equitable estoppel against Kasperbauer, McConnell and the Trustee Defendants in Count VI, the claims for benefits in Counts VII and VIII are presumably brought pursuant to § 1132(a)(1)(B).[5] Plaintiffs do not specify the theory of law upon which they base Counts IX and X, but they appear to rest on some contractual or quasi-contractual theory of liability, and thus presumably fall under the authority of § 1132(a)(3)(B),

---

**5.** The Second Amended Complaint states that Plaintiffs' claims are brought pursuant to, *inter alia,* §§ 1132(a)(2) & (3). Under § 1132(a)(2), a fiduciary may be held personally liable to the plan for losses caused by a breach of fiduciary duty. Under § 1132(a)(3), participants may sue for injunctive relief or appropriate equitable relief to redress violations of ERISA or the plan, or to enforce ERISA provisions or plan terms. Plaintiffs do not specifically plead a claim under § 1132(a)(1)(B), although they argue in their papers that the claim for benefits is brought under §§ 1132(a)(1) & (3). (Pls.' Resp. to PBGC Mot. to Dismiss at 12.) As discussed below, to the extent that any of Plaintiffs' claims for benefits are brought under § 1132(a)(3), they must be identical in substance to their equitable estoppel claim.

which generally provides equitable relief to ERISA plan participants.

The First Amended Complaint, proposed Second Amended Complaint and plaintiffs' moving papers are less than clear as to whether plaintiffs claim an entitlement to Plan benefits based on the explicit terms of the Plan document itself. It appears to the court that plaintiffs' claims for Plan benefits are based on the SPD and the Plan Brochure rather than the Plan itself. Because the Plan, the SPD and the Plan Brochure are critical to these claims, the court can consider them in addressing the instant motions to dismiss.

Plaintiffs appear to contend in these Counts that they are entitled to benefits under the plain terms of Section 16.2 of the Plan. Further, they assert that some of the statements in the SPD and Plan brochure described above led them to believe that they were entitled to the value of their "accounts" as described in their personal account statements and thus are entitled to benefits in that amount.

### 1. Claims for Plan Benefits in Counts VII & VIII

For the following reasons, plaintiffs cannot succeed on their claims for Plan benefits in Counts VII and VIII of the proposed Second Amended Complaint.

First, irrespective of whether plaintiffs' claims for Plan benefits are properly before the court,[6] the explicit terms of the Plan itself dictate that plaintiffs are not entitled to benefits. With exceptions that are not relevant here, absent plan termination, employees acquired a nonforfeitable (vested) right to accrued benefits if they had completed five years of service, as provided in § 5.1 of the Plan. (Kasperbauer Mot. to Dismiss Ex. A § 5.1.) It is undisputed that plaintiffs did not vest pursuant to this provision.

Section 16.2 of the Plan unambiguously provides that upon termination, participants acquire a nonforfeitable right to accrued benefits "to the extent funded as of such date." *Id.* Ex. A § 16.2. Although plaintiffs argue that the Plan was "underfunded," the Second Amended Complaint does not allege that the Plan contained insufficient assets to pay benefits pursuant § 16.5 of the Plan, which provided the order in which assets were to be paid from the Plan upon termination. Nor does it allege that the Plan failed to meet ERISA's funding requirements.[7] Thus, the very fact that the Plan was not sufficiently funded to pay plaintiffs' benefits upon partial termination dictates a conclusion that the plaintiffs clearly did not acquire a vested right to Plan benefits.[8] *See*

---

6. To properly plead a claim for Plan benefits, Plaintiffs must have exhausted administrative remedies unless they allege that resort to such remedies would be futile. *Weldon v. Kraft*, 896 F.2d 793, 796 (3d Cir.1990); *Delong v. Teacher's Ins. and Annuity Ass'n*, Civ. No. 99–1384, 2000 WL 426193, at * 4 (E.D.Pa. Mar.29, 2000); *Smith v. Prudential Health Care Plan, Inc.*, Civ. No. 97–891, 1997 WL 587340, at * 4 (E.D.Pa. Sep.10, 1997); *Zuraola v. Alfa–Laval Separation, Inc.*, Civ. No. 95–2840, 1996 WL 187556, *4 (E.D.Pa. Apr.17, 1996). Plaintiffs concede that they did not exhaust administrative remedies, but allege that no such remedies exist and that to resort to them would be futile.

7. Indeed, Plaintiffs concede that "if a cash balance plan terminates, it is possible that the plan will be unfunded as to some or all of the participants, because the employer is required under the funding requirements for defined benefit plans to contribute only enough to pay those eligible for benefits in the current year." (First Amended Compl. ¶ 59; proposed Second Amended Compl. ¶ 66.)

8. In this regard, the Plan is consistent with federal law governing the allocation of assets from defined benefit plans upon termination or partial termination. *See* 26 U.S.C. § 411(d)(3) (providing that pension plan trust is not "qualified" for federal income tax purposes unless plan provides that rights of qual-

*Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 512, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (stating that statutory definition of "nonforfeitable" assures that claim to benefit is legally enforceable, but does not guarantee particular amount or method for calculating benefit).

■ Second, to the extent that plaintiffs' claims for benefits are brought under § 1132(a)(1)(B) and are based upon statements made in the SPD or Plan Brochure, their theory of liability finds no support in the caselaw of this circuit. Plaintiffs' statement that documents other than the Plan itself, "including the SPD, may create the right to benefits even if they contradict the terms of the Plan itself" is contrary to Third Circuit law. *See Gridley*, 924 F.2d at 1318 (holding that, under § 1132(a)(1)(B), plaintiff cannot recover benefits allegedly due under SPD); *Crane*, 1998 WL 151801, *3, n. 8, 1998 U.S. Dist. LEXIS 4293, at * 10 n. 8 (stating that although SPD might conceivably serve as extrinsic evidence of Plan's meaning should latter prove ambiguous, it is irrelevant to plaintiff's entitlement to benefits).

■ Plaintiffs cite *Edwards v. State Farm Mutual Auto. Insurance Company*, 851 F.2d 134, 137 (6th Cir.1988), in support of their theory that the SPD and Plan Brochure entitle them to Plan benefits. In *Edwards*, the Sixth Circuit held that statements in a plan summary are binding if they conflict with statements in the plan itself, and that a plaintiff need not demonstrate detrimental reliance on such statements to recover plan benefits where the SPD violated 29 U.S.C. § 1022(a). That section provides that an SPD must be written in a manner that would be clearly understood by the average plan participant and that reasonably apprizes participants of their rights under the plan. *Id.* at 136–37. *Edwards*, however, is contrary to and was decided three years before *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir.1990). In *Hozier*, the Third Circuit held that ERISA reporting and disclosure violations are irrelevant in determining a plaintiff's entitlement to benefits under the plan. *Hozier*, 908 F.2d at 1170. Thus, in this Circuit, plan benefits allegedly due under statements in documents other than the plan itself are only recoverable pursuant to the limited enforcement provisions of § 1132(a)(1)(A), or under an equitable estoppel claim brought under § 1132(a)(3)(B). *See* 29 U.S.C. § 1132(a)(1)(A) (permitting action by participant based on § 1132(c), which provides for assessment of civil penalties for certain ERISA violations); *Hozier*, 908 F.2d at 1170 (noting that actions to redress reporting violations should be brought under § 1132(a)(1)(A)). Accordingly, Counts VII and VIII of the proposed Second Amended Complaint fail to state a claim for Plan benefits.

## 2. Claims Against PBGC for Payment of Insured Benefits and for Benefits for Which Premiums Were Collected

■ Notwithstanding their claims for benefits under the terms of the Plan, SPD and Plan Brochure, plaintiffs assert that there is an implied agreement between plaintiffs and PBGC to pay plan benefits because PBGC collected insurance premi-

---

ified employees to benefits accrued to date of partial termination are nonforfeitable to extent funded); 29 U.S.C. § 1344 (providing order in which plan assets are to be distributed upon termination: forfeitable benefits distributed last); *see also Freeman v. The Central States, Southeast and Southwest Areas Pension Fund*, 32 F.3d 90, (4th Cir.1994) (stating that upon partial termination, 26 U.S.C. § 411(d)(3) requires only that benefits be paid to extent funded, and that "termination" benefits are not to be paid because employees are entitled to them, but to prevent dedicated money from reverting to employer).

ums for this very purpose. (Resp. & Opp'n to PBGC's Mot. to Dismiss at 17.) Essentially, plaintiffs argue that PBGC's acceptance of premiums from AHERF on behalf of plaintiffs created an insurer-insured relationship which obligates PBGC to pay plaintiffs' claims, and that there was an implied contractual agreement between plaintiffs and PBGC obligating PBGC to guarantee plaintiffs' benefits. These claims, asserted in Counts IX and X of the proposed Second Amended Complaint, fail as a matter of law.

Initially, it must be observed that since we have determined that plaintiffs are not entitled to benefits under the plan, any claim for benefits based upon PBGC's guarantee necessarily must also fail, since it is still a claim for benefits. Assuming, however, that plaintiffs' became entitled to benefits upon termination, those benefits are not guaranteed under ERISA. The statutory provisions governing the extent to which PBGC guarantees benefits explicitly provides that the PBGC "shall guarantee ... the payment of all nonforfeitable benefits (other than benefits becoming nonforfeitable solely on account of the termination of a plan) ...." 29 U.S.C. § 1322(a). Because plaintiffs argue that any benefits to which they claim entitlement became nonforfeitable *solely* as a result of the Plan's partial termination, any such alleged nonforfeitable benefits are not guaranteed by PBGC.

Additionally, to the extent that Count X of the proposed Second Amended Complaint is based on a contract theory, it fails as a matter of law. The premiums paid to PBGC were not collected from plaintiffs, but rather from AHERF as plan sponsor and the Plan itself, pursuant to the terms of 29 U.S.C. § 1307(e)(1). That section provides that the plan itself and its contributing sponsor are liable for payment of ERISA Title IV premiums. Thus, the premiums were not voluntarily paid pursu-

ant to an agreement, but were mandatorily paid pursuant to a statutory obligation. As discussed above, plaintiffs' benefits, even if nonforfeitable, are not guaranteed by PBGC under the relevant provision of ERISA. Plaintiffs cite no authority for the proposition that the statutorily obligated payment of these premiums can expand the scope of the benefits that PBGC must insure beyond what it is obligated to guarantee by the ERISA statute.

Lastly, it should be noted that the parties have not briefed the issue of whether these claims, which appear to rest on common law contract principles rather than any specific provisions of ERISA, are preempted by ERISA. We thus do not reach this issue.

### 3. Equitable Estoppel

■■■■■■ ERISA authorizes claims for equitable estoppel under § 1132(a)(3)(B). *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.1994). To prevail on a claim of equitable estoppel, plaintiffs must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance thereon; and (3) extraordinary circumstances. *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 907 (3d Cir.1995) (*"Unisys II"*) (citing *Curcio*, 33 F.3d at 235; *Smith v. Hartford Ins. Group*, 6 F.3d 131, 137 (3d Cir.1993)); *Gridley*, 924 F.2d at 1319. The determination of an equitable estoppel claim is a mixed question of law and fact. *Curcio*, 33 F.3d at 236 (citing *Fischer*, 994 F.2d at 135). We find that all of the plaintiffs' equitable estoppel claims, whether in Count VI, which is asserted against Kasperbauer, McConnell and the AHERF Trustees, or in Counts VII through X, fail as a matter law.

■■■■ First, it is uncontested that PBGC is the current Plan Administrator and that Kasperbauer, McConnell and the AHERF

Trustees no longer have any authority with respect to any relevant aspect of the Plan. Even if plaintiffs could otherwise satisfy the elements of an equitable estoppel claim, the court is without power to enjoin any of these defendants from enforcing the Plan in a manner to which plaintiffs object because none of these defendants currently have any power over Plan administration or enforcement. Because plaintiffs' asserted injury is not redressable against Kasperbauer, McConnell or the AHERF Trustees, they lack standing to sue them for relief under either § 1132(a)(1)(B) or § 1132(a)(3). *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1197–98 (8th Cir.1998) (holding that plan participant lacked standing to sue former plan administrator under §§ 1132(a)(1)(B) or (a)(3) because claim not redressable); *see also Reilly v. Keystone Health Plan East*, Civ. No. 98–1648, 1998 WL 422037, **5–6, 1998 U.S. Dist. LEXIS 11337, at *17–20 (E.D.Pa. July 27, 1998) (noting that it appeared likely that ERISA provided no remedy for plaintiff attempting to sue former plan administrator who was no longer connected to plan).

Second, if plaintiffs are attempting to pursue an equitable theory against PBGC in any of Counts VII through X, such a claim cannot succeed based on the factual allegations of the proposed Second Amended Complaint.[9] The PBGC is a government entity for purposes of an equitable estoppel claim. *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 72 F.Supp.2d 547, 559 (W.D.Pa.1999) (hereinafter *"White Indus."*). "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In this Circuit, in order to state a claim of equitable estoppel against the government, a plaintiff must not only plead the traditional elements of the claim, but must also plead some affirmative misconduct on the part of government officials.[10] *Fredericks v. Comm. of Internal Revenue*, 126 F.3d 433, 438 (3d Cir.1997); *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir.1992); *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir.1987); *White Indus.*, 72 F.Supp.2d at 551; *Cook v. Pension Benefit Guar. Corp.*, 652 F.Supp. 1085, 1090 (S.D.N.Y. 1987).

Further, plaintiffs cite no authority for the proposition that estoppel can lie against any defendant, let alone the government, for acts or omissions of a third-party, absent some type of agency relationship between the defendant and that third-party. *See, e.g., Natale v. Brown*, Civ. No. 91–0111, 1993 WL 267359, *9, 1993 U.S. Dist. LEXIS 9479, at *31 (S.D.N.Y. July 14, 1993) (holding, under New York law, that because retirement plan cannot be estopped by reason of misinformation of administrative employees, then misinformation by non-agent could not give rise to estoppel claim against plan) (citations omitted). The court in *Heckler*, after quoting the Restatement 2d

---

**9.** In their papers, Plaintiffs state that PBGC "is estopped from interpreting or enforcing the Plan in any manner other than in accordance with the provisions of the Plan Brochure and/or the SPD." (Pls.' Resp. to Kasperbauer Mot. to Dismiss at 19.)

**10.** As discussed *White Indus.*, the Supreme Court has "stopped just short of holding that estoppel can never be asserted against the government." *White Indus.*, 72 F.Supp.2d at 551; *see also Office of Pers. Mgt. v. Richmond*, 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (holding that estoppel cannot support claim to public funds and stating that it need not address in that case whether there are extreme circumstances that might support estoppel against government in other contexts).

of Torts, stated that "the party claiming the estoppel *must have relied on its adversary's conduct* 'in such a manner as to change his position for the worse.'" *Heckler*, 467 U.S. at 59, 104 S.Ct. 2218 (emphasis added). Also, the government cannot be bound by the misrepresentations of an agent unless those representations are clearly within the scope of the agent's authority. *Richmond*, 496 U.S. at 419–20, 110 S.Ct. 2465 (citing *Lee v. Munroe & Thornton*, 11 U.S. 366, 7 Cranch 366, 3 L.Ed. 169 (1813)).

Taken together, the caselaw demonstrates that estoppel can only lie against PBGC if one of its agents, acting within the scope of his or her authority, engaged in affirmative misconduct that was relied upon by plaintiffs. The proposed Second Amended Complaint contains no such allegations of material misrepresentations or other affirmative misconduct by PBGC upon which plaintiffs relied. Thus, it fails to plead this critical element of an equitable estoppel claim against PBGC.[11]

For all of these reasons, plaintiffs' claims of equitable estoppel and for Plan benefits fail as a matter of law.

## C. Breach of Fiduciary Duty Claims

Count I of the proposed Second Amended Complaint alleges that through the Plan Brochure, the SPD and verbal communications, Kasperbauer, McConnell and the AHERF Trustees falsely represented: (1) that plaintiffs had immediate access to the sums in their accounts when benefits were to be distributed; (2) that those benefits would not be affected by a sale of AHERF's assets; (3) that the Plan would not be terminated; (4) that if the Plan was terminated plaintiffs would become automatically vested and entitled to the accrued benefits in their account; and (5) that PBGC guaranteed all vested benefits, including those vesting pursuant to Plan termination. (Proposed Second Amended Compl. ¶ 143.) It further alleges plaintiffs were entitled to rely on those representations and that they were damaged by these misrepresentations because "Plaintiffs received less compensation and benefits for being employed at AHERF than they were led to believe they would receive." *Id.* ¶¶ 144 & 145.

Count II alleges that Kasperbauer, McConnell, Mellon and the Trustee Defendants knew that plaintiffs' benefits were at risk because AHERF was likely to be sold or file bankruptcy, knew or should have known that the Plan was underfunded, and knew that plaintiffs would not receive benefits upon termination but failed to warn plaintiffs of these facts, and knew of misrepresentations in the Plan Brochure and the SPD but failed to advise participants

---

**11.** Even assuming, *arguendo*, that the statements in the SPD and the Plan Brochure were material misrepresentations or omissions that could be the basis of an equitable estoppel claim against the Kasperbauer, McConnell, the AHERF Trustees or PBGC, plaintiffs have not sufficiently pled that they detrimentally relied on those statements. Both the Amended Complaint and the Proposed Second Amended Complaint state that:

By providing plaintiffs with the Plan Brochure and/or the SPD, defendant Kasperbauer, McConnell and the Trustee Defendants *intended to cause*, or reasonably expected, plaintiffs to rely on the statements therein.... Plaintiffs have been de-

prived of their accrued benefits under the Plan because ... the plan is underfunded as to them.

(Proposed Second Amended Compl. ¶¶ 182 & 183.) Because plaintiffs had no right to benefits under the Plan, they do not, and cannot, allege that they have been deprived of plan benefits because they took some action forfeiting rights to plan benefits that they otherwise would have had. Given the existence of adequate other grounds for our decision, we need not rule on this issue with regard to plaintiffs' equitable estoppel theories. However, see the related discussion regarding causation as an element of the breach of fiduciary duty claims, *infra* at § C.3.d.

that they had been misled.[12] It further alleges that these defendants knew or should have known of the alleged misrepresentations and omissions contained in the Plan Brochure and SPD, but failed to advise participants that they had been misled about their benefits.

Counts III and IV allege that Kasperbauer, McConnell, Mellon and the Trustee Defendants mismanaged Plan assets by: failing to avoid a shortfall between Plan funds and the benefits of participants vesting upon partial termination; failing to act to ensure sufficient Plan assets and liquidity to pay these plaintiffs' benefits; permitting such shortfalls during the most favorable investment climate in history; and engaging in a transaction by which AH-ERF paid Mellon an $89 million debt owed on a line of credit, thus diverting funds away from the Plan. Count IV further alleges that Mellon breached its fiduciary duties under the Master Trust agreement by failing to establish individual accounts for Plan beneficiaries and failing to take all action necessary for the protection of the Plan and its participants and beneficiaries.

Count V alleges that Cahouet, Barnes, Gumberg, Adam and Fletcher mismanaged Plan assets by improperly influencing AH-ERF to make the $89 million payment to Mellon.

### 1. Mismanagement of Plan Assets, Failure to Warn Participants that the Plan was Underfunded and the $89 Million Payment to Mellon

As an initial matter, to the extent that the Amended Complaint alleges that any of these defendants breached a fiduciary duty by mismanaging Plan assets, resulting in a shortfall between Plan assets and Plan obligations, those allegations fail as a matter of law. As already discussed above, the Plan was sufficiently funded under governing law. Plaintiffs, whose benefits vested only to the extent funded, were not entitled to benefits under the explicit terms of the Plan. Therefore, it follows that there was no shortfall between Plan benefits and any Plan obligations regarding plaintiffs because there was simply no obligation to ensure that the Plan was sufficiently funded to pay any benefits

---

**12.** The court need not address whether Counts I through V, which are brought pursuant to § 1132(a)(3), must be dismissed because plaintiffs have an adequate remedy under Counts VI and VII, which are presumably brought under § 1132(a)(1)(B). *See Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding that breach of fiduciary duty claims could be maintained under § 1132(a)(3), but stating, in *dicta,* that courts should be reluctant to fashion such relief where Congress elsewhere provided adequate remedy). The caselaw of this district is split as to whether claims under §§ 1132(a)(1)(B) and (a)(3) are mutually exclusive. *Compare Moore v. First Union Corp.,* Civ. No. 00–2512, 2000 WL 1052140, *1, 2000 U.S. Dist. LEXIS 10730, at *2–3 (E.D.Pa. July 27, 2000) (refusing to dismiss § 1132(a)(3) claim where plaintiff also pled § 1132(a)(1)(B) claim); *Parente v. Bell Atlantic Pa.,* Civ. No. 99–5478, 2000 WL 419981, at *2–4 (E.D.Pa. Apr.18, 2000) (same), *with Smith v. Thomas Jefferson Univ.,* 52 F.Supp.2d 495, 498 n. 4 (E.D.Pa.1999) (observing that if plaintiff were to proceed under § 1132(a)(1)(B), then court must dismiss § 1132(a)(3) claim); *Reilly v. Keystone Health Plan East,* Civ. No. 98–1648, 1998 WL 422037, **4–5, 1998 U.S. Dist. LEXIS 11337, at *16 (E.D.Pa. July 27, 1998) (dismissing § 1132(a)(3) claim where plaintiff sought relief under § 1132(a)(1)(B)); *Feret v. Corestates Fin. Corp.,* Civ. No. 97–6759, 1998 WL 426560, *5, 1998 U.S. Dist. LEXIS 11512, at *16 (E.D.Pa. July 27, 1998) (same); *Smith v. Prudential Health Care Plan, Inc.,* Civ. No. 97–891, 1997 WL 746045, *1, 1997 U.S. Dist. LEXIS 18991, at *2 (E.D.Pa. Nov. 25, 1997) (same); *Kuestner v. Health & Welfare Fund & Pension Fund of the Phila. Bakery Employers & Food Driver Salesmen's Union Local No. 463,* 972 F.Supp. 905, 910–11 (E.D.Pa.1997) (same). Because plaintiffs fail to state a claim for Plan benefits, they obviously do not have an adequate remedy under § 1132(a)(1)(B).

to them.[13] Any claim premised upon the failure to warn plaintiffs that the Plan was underfunded fails as a matter of law for the same reasons.

■ We also find no legal basis for the plaintiffs' claim that the defendants named in Counts III through V breached their ERISA fiduciary duties through their involvement in AHERF's $89 million payment. Because the Plan was adequately funded, that payment cannot be the basis of a claim for mismanagement or conflict of interest.[14]

The argument that AHERF's payment to Mellon constituted a breach of fiduciary duty fails for yet another reason: business decisions unrelated to plan administration, i.e., business decisions not regulated by ERISA, do not give rise to ERISA fiduciary duties. *Payonk v. HMW Indus., Inc.*, 883 F.2d 221, 224–25 (3d Cir.1989). Thus, the payment of a previously incurred legal obligation to Mellon, a quintessential business decision, cannot be the basis of a claim for breach of fiduciary duty. *See id.* at 229 (holding that decision to terminate plan made in accordance with ERISA is business decision that does not implicate fiduciary duties); *Demaio v. Cigna Corp.*, Civ. No. 89–0724, 1993 WL 20173, at *5–6 (E.D.Pa. Jan.26, 1993) (holding that decision to stop funding plan in anticipation of impending bankruptcy does not give rise to ERISA fiduciary duties); *Blaw Knox*

*Ret. Income Plan v. White Consol. Indus., Inc.*, 998 F.2d 1185, 1189 (3d Cir.1993) (holding that sale of plan does not implicate ERISA fiduciary duties); *Frank v. Colt Indus., Inc.*, 910 F.2d 90, 101 (3d Cir.1990) (holding that ERISA fiduciary duties do not attach to decision to terminate employees); *accord Bennett v. Conrail Matched Savings Plan Admin. Committee*, 168 F.3d 671, 679 (3d Cir.1999); *Anderson v. Consol. Rail Corp.*, Civ. No. 98–6043, 1999 WL 239054, at *3 (E.D.Pa. Apr.7, 1999).

■ Plaintiffs cite § 7.2 of the Master Trust Agreement for the proposition that Mellon had a duty to establish individual accounts for the plaintiffs. That provision gives Mellon authority to establish and maintain separate accounts in accordance with the instructions of the Plan Administrator, a Named Fiduciary, or as determined to be necessary by the Master Trustee. (Mellon Mot. to Dismiss Ex. C. § 7.2.) However, it is clear that these "accounts" refer not to accounts for individual Plan participants, but to accounts that the named fiduciary directs Mellon to establish for Investment Managers appointed by the Named Fiduciary to manage specified portions of the trust fund. *Id.* § 5.3(a). Further, Mellon is expressly divested of anything but custodial duties with regard to these accounts. *Id.* Thus, Mellon did not breach an ERISA fiduciary duty by failing

---

**13.** In addition, these allegations are insufficiently pled. Although claims premised upon mismanagement of assets resulting in poor investment returns must specifically plead how funds were mismanaged, Plaintiffs' claim of mismanagement is nothing but a conclusory allegation that the defendants "mismanaged the Plan assets under one of the most favorable investment climates in history." Proposed Second Amended Compl. ¶ 158; *see Phillpott v. Anco Ind., Inc.*, 1996 WL 344502, at *4 (E.D.La. June 24, 1996) (dismissing breach of fiduciary duty claim for failure to allege how fund was neglected or how prudent fiduciary would have handled fund dif-

ferently); *Jones v. Baskin, Flaherty, Elliot and Mannino, P.C.*, 738 F.Supp. 937, 941–42 (W.D.Pa.1989) (citation omitted) (dismissing claim that fiduciaries breached duties by mismanaging fund resulting in poor return because plaintiff failed to support claim with specific factual allegations).

**14.** In their prayer for relief and Counts III through V, Plaintiffs seek restitution to the Plan in the amount of any losses sustained by the Plan. Because it is undisputed that the Plan was adequately funded under ERISA, Plaintiffs fail to state a claim for restitution to the Plan.

to establish individual accounts for plaintiffs.

Because the Plan was adequately funded, it cannot be maintained that Mellon breached a fiduciary duty in failing to take all necessary action to protect the Plan and its participants and beneficiaries.

### 2. Failure to Warn of Impending Plan Termination

■ To the extent that Kasperbauer, McConnell, Mellon and the AHERF Trustees are alleged to have breached their fiduciary duties by simply failing to warn plaintiffs of the likelihood of a plan termination, such claims fail as a matter of law. In this Circuit, an employer's lawful termination decision constitutes a business decision that, absent affirmative misrepresentations designed to mislead plan participants, is not governed by ERISA's standards of fiduciary duties. *Payonk v. HMW Indus., Inc.*, 883 F.2d 221, 229 (3d Cir.1989). As a consequence, absent such misrepresentations designed to mislead plan participants, plan fiduciaries need only comply with ERISA's notice provisions regarding termination. *Id.* There is no allegation in the First Amended Complaint or the proposed Second Amended Complaint that AHERF failed to comply with ERISA's notice requirements.[15]

### 3. Affirmative Misrepresentation and/or Failure to Warn Plaintiffs of the Effect of a Plan Termination on Plan Benefits

Plaintiffs assert that the First Amended Complaint and the proposed Second Amended Complaint state a claim for breach of fiduciary duty based on either (1) affirmative misrepresentations by Kasperbauer, McConnell, the AHERF Trustees and Mellon, or (2) on those defendants' participation in or knowledge of misrepresentations by Kasperbauer.[16] (Resp. to McConnell Mot. to Dismiss at 8–9; Resp. to AHERF Trustees Mot. to Dismiss at 12; proposed Second Amended Compl. ¶¶ 143 & 152.) Specifically, the proposed Second Amended Complaint alleges that through the SPD, Plan brochure "and/or verbal communications," Kasperbauer, McConnell and the AHERF Trustees misrepresented (1) plaintiffs' rights to benefits under the Plan, (2) the effect of a Plan termination on those benefits and (3) the scope of PBGC's guaranty of benefits.[17] We find that the allegations of affirmative misrepresentations or other misleading statements contained in the SPD or Plan Brochure, fail to state a claim for two reasons.[18]

First, to the extent that Count II rests on plaintiffs' assertion that the defendants named in it should have known of misrep-

---

**15.** Because plaintiffs' claims of breach of fiduciary duties based on allegations of mismanagement, conflict of interest, failure to warn that the Plan was underfunded and failure to warn of AHERF's impending bankruptcy are so clearly lacking in other respects, the court need not determine whether each of the defendants against whom those claims are asserted is a fiduciary for purposes of those claims. *See infra* § C.3.a. (discussing scope of Kasperbauer's, McConnell's, Mellon's and the AHERF Trustees' fiduciary duties for purposes of claim that they breached fiduciary duties through misrepresentations or omissions in the Plan Brochure or SPD).

**16.** As discussed infra, one AHERF Plan fiduciary may be liable for another's breach if, inter alia, he knowingly participates in or

knows of and fails to take reasonable steps to remedy the other's breach. *See* Kasperbauer Mot. to Dismiss Ex. A. § 11.3 (providing circumstances under which one fiduciary can be liable for another's breach).

**17.** Nowhere does the proposed Second Amended Complaint identify misrepresentations made by any particular defendant other than Kasperbauer, and the only misrepresentations identified are those allegedly contained in the SPD, Plan Brochure and account statements.

**18.** The Plan provides that a fiduciary shall not be liable for the breach of another fiduciary to whom other fiduciary duties have been assigned except in three limited circumstances: (a) if he knowingly participates in or conceals

resentations by another defendant, it fails as a matter of law because the Plan itself premises liability for another fiduciary's breach on "knowledge of a breach by such other fiduciary," not constructive knowledge of the breach. (Kasperbauer Mot. to Dismiss Ex. A. § 11.3.) Thus, an allegation that a defendant should have known of another fiduciary's breach fails to state a claim.

Second, plaintiffs' claims of liability based on another fiduciary's breach and of verbal misrepresentation are wholly conclusory in nature and thus are insufficiently pled. *Plaintiffs do not identify any particular verbal misrepresentations by any of these defendants.* The proposed Second Amended Complaint does not mention any verbal communications between Plaintiffs and the defendants aside from the phrase in Count II asserting that there were verbal misrepresentations, and plaintiffs' claims otherwise focus exclusively on statements in the SPD and Plan Brochure. Further, the proposed Second Amended Complaint fails to allege any facts concerning how any of these defendants became aware of any misrepresentations of another defendant, whether verbal or in the SPD or Plan Brochure. As our Court of Appeals pointed out in *Maio v. Aetna, Inc.,* the court:

need not accept as true unsupported conclusions and unwarranted inferences. Courts have an obligation in matters before them to view the Complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the Complaint, but in a realistic, rather than a slavish manner.

*Maio v. Aetna, Inc.,* 221 F.3d 472, 485 n. 12 (3d Cir.2000) (internal citations and quotations omitted). Thus, we are not bound to accept as true mere conclusory allegations of verbal misrepresentations or that any of the defendants named in Count III knew of misrepresentations made by other defendants. To the extent that Counts I and II rest entirely on such allegations, they fail as a matter of law.[19]

Count II of the proposed Second Amended Complaint asserts, at most, only a claim of failure to warn plaintiffs of the effect of a partial termination on their rights under the Plan—something akin to a negligence claim. In its current form, it does not sufficiently plead claims of any other nature, even under the liberal standards of Federal Rule of Civil Procedure 8.[20]

---

the other's breach, knowing that the other's act or omission is a breach; (b) if his failure to discharge his own fiduciary responsibilities enabled the other to commit a breach; or (c) if he knows of the other's breach and does not make reasonable efforts under the circumstances to remedy it. (Kasperbauer Mot. to Dismiss Ex. A. § 11.3.)

19. Given that we deal here with a proposed second amended complaint, we find that any further attempt to put flesh on these bare bones would be an exercise in futility.

20. Further, to the extent that plaintiffs seek recovery based on alleged intentional misrepresentations by any of these defendants based on alleged misrepresentations not contained in the SPD or Plan Brochure, the Amended Complaint is clearly in violation of Rule 9(b). It does not identify any other misrepresentations with particularity. The law is less clear as to whether Plaintiffs must plead non-intentional misrepresentations with particularity under Rule 9(b). *See Small v. Provident Life & Accident Ins. Co.,* Civ. No. 98–2934, 1998 WL 848112, at *3 (E.D.Pa. Dec.4, 1998) (stating that Rule 9(b) only applies to fraud or mistake, not negligent misrepresentation); *HCB Contractors v. Rouse & Assocs., Inc.,* Civ. No. 91–53550, 1992 WL 176142, at *6 (E.D.Pa. July 13, 1992) (same); *see also Concha v. London,* 62 F.3d 1493 (9th Cir.1995) (holding Rule 9(b) inapplicable in context of

Accordingly, it remains for the court to decide whether, as a matter of law, there is any possibility that plaintiffs can prevail on a claim that Kasperbauer, McConnell or the AHERF Trustees misrepresented plaintiffs' rights under the Plan, or on a claim that Kasperbauer, McConnell, the AHERF Trustees or Mellon failed to notify participants of their rights under the Plan and the effect of a partial termination on those rights.

 ERISA mandates that a fiduciary "shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104. To succeed on a breach of fiduciary duty claim, a plaintiff must establish four elements: (a) proof of fiduciary status; (b) misrepresentations or material omissions; (c) knowledge of the confusion created; and (d) resulting harm to the employees. *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1265 (3d Cir.1995) ("*Unisys I* "). We will address each of these elements, and their applicability to each defendant named in Counts I and II, in turn.

### a. Fiduciary Status

Although plaintiffs assert that a determination as to whether a defendant is a fiduciary under ERISA is a factual issue inappropriate for determination in the context of a motion to dismiss, Kasperbauer, Mellon, and McConnell concede that they were fiduciaries under the AHERF plan. The AHERF Trustees also concede that the Board was an ERISA fiduciary. All of these defendants except Kasperbauer assert, however, that they were not fiduciaries for purposes relevant to allegations that they breached fiduciary duties by failing to warn plaintiffs of their rights under the Plan.[21] Specifically, they assert that the Plan (along with the Master Trust Agreement in Mellon's case), upon which plaintiffs' allegations of fiduciary status rely, makes them limited purpose fiduciaries with no fiduciary duties to administer the plan. It appears that the allegations of the Amended Complaint and the undisputed facts leave only an issue of law to be resolved: whether the defendants named in Counts I and II had fiduciary duties to warn plaintiffs that the Plan would likely be terminated, that it was not funded at a level at which plaintiffs would receive benefits upon termination and that as a result, plaintiffs would not receive benefits under the Plan. We find that with the exception of Kasperbauer, none of the defendants named in Counts I and II of the proposed

ERISA breach of fiduciary duty claim in case where plaintiffs did *not* allege misrepresentation); *but see Catalano v. Bedford Assocs.*, 9 F.Supp.2d 133 (D.Conn.1998) (applying Rule 9(b) to negligent misrepresentation claims); *Simon v. Castello*, 172 F.R.D. 103, 105 (S.D.N.Y.1997) (same) (citations omitted); *Breeden v. Richmond Community College*, 171 F.R.D. 189, 198–200 (M.D.N.C.1997) (conducting exhaustive review of caselaw concerning application of Rule 9(b) to claims of negligent misrepresentation and the rule's history: concluding that rule applies "to ac-

tions wherein the major component involves significant delusion or confusion of a party, whether intentional or not") (citations omitted).

21. Plaintiffs assert that Mellon qualifies as a named fiduciary under the Plan. However, in order to qualify as a named fiduciary under ERISA, a person or entity must be designated as such in the plan instrument. 29 U.S.C. § 1102(a)(2). Mellon is not designated as a fiduciary by the Plan instrument, and thus does not qualify as a named fiduciary.

Second Amended Complaint had such a duty.

Fiduciary duties "attach not just to particular persons, but to particular persons performing particular functions." *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1158 (3d Cir.1990). Thus, a person may be an ERISA fiduciary for some purposes, but not for others. *Plumb v. Fluid Pump Serv.,* 124 F.3d 849, 854 (7th Cir.1997). There are three ways to acquire fiduciary status under ERISA: (1) being named as a fiduciary in the instrument establishing the employee benefit plan, 29 U.S.C. § 1102(a)(2); (2) being named a fiduciary pursuant to a procedure specified in the plan instrument, such as being appointed an investment manager who has fiduciary duties toward the plan, *Id.* §§ 1002(38) & 1102(a)(2); and (3) being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A), which provides that a person is a plan fiduciary to the extent that he (i) exercises discretionary authority or control in the management of the plan or the management or disposition of its assets, (ii) renders investment advice for compensation with respect to plan assets, or has any authority or responsibility to do so, or (iii) he has discretionary authority or responsibility in the administration of the plan. *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.,* 93 F.3d 1171, 1179 (3d Cir.1996). Thus, reduced to its essence, to be a fiduciary under ERISA, a person must have discretionary authority or control concerning the management, assets or administration of the plan.[22] *Confer v. Custom Eng'g Co.,* 952 F.2d 34, 36 (3d Cir.1991).

Article XI of the Plan allocates fiduciary responsibilities among the AHERF Board, AHERF's Chief Financial Officer ("CFO"), the Plan Administrator, the Investment Manager, and the Trustee. (Kasperbauer Mot. to Dismiss Ex. A. § 11.1.) It further provides that its purpose is "to allocate to each of the fiduciaries identified in § 11.1 exclusive responsibility for prudent execution of the functions assigned to him and no responsibility for execution of functions assigned to others." *Id.* Ex. A. § 11.2. Whenever one fiduciary is required by the Plan or Master Trust Agreement to follow another fiduciary's directions, the two fiduciaries "shall not be deemed to have the been assigned a shared responsibility, but the fiduciary giving the directions shall have sole responsibility for the functions assigned to him ... and the fiduciary receiving the directions shall have sole responsibility for the functions assigned to him ...." *Id.* Ex. A § 11.2.

(i) Kasperbauer

Kasperbauer serves as the Plan Administrator. In addition to vesting the Plan Administrator with any implied powers and duties necessary to carry out the Plan's provisions, the Plan specifically vests the Plan Administrator with the power and duty "to perform any and all duties required of the administrator of a plan under ERISA and the Code." *Id.* Ex. A § 12.1(f). ERISA requires plan administrators to communicate with participants about their rights under the Plan, a fact not disputed by Kasperbauer. *See, e.g.,* 29 U.S.C. §§ 1021(a) & 1024(b) (requiring plan administrators to furnish SPDs and annual reports to participants). Thus, as Plan Administrator, Kasperbauer was clearly a fiduciary under ERISA for purposes of administering the Plan, and of particular importance in the instant case, communicating with Plan participants.

---

**22.** A corporation may be a "person" under ERISA. *Confer,* 952 F.2d at 36.

### (ii) McConnell

McConnell was the CFO of AHERF. Under the Plan, the Chief Financial Officer of AHERF was a named fiduciary for the purposes of managing and controlling Plan assets (including selection of investment managers), asset allocation, and establishment of investment policies, objectives and guidelines. *Id.* Ex. A § 11.1(b). Thus, the Plan did not vest McConnell, in his role as AHERF's Chief Financial Officer and Treasurer, with any fiduciary duties related to informing Plan participants of their rights under the Plan and the effect of a partial termination on those rights. Further, the proposed Second Amended Complaint does not allege that McConnell was delegated or exercised any authority or responsibility over Plan administration. Accordingly, we will grant McConnell's motion to dismiss on the basis that he was not an ERISA fiduciary for purposes of informing plaintiffs of their rights under the Plan.

### (iii) The AHERF Trustees

Under the Plan, the responsibilities of the AHERF Board are limited to the appointment, removal and replacement of the Trustee. (Kasperbauer Mot. to Dismiss Ex. A § 11.1(a).) The Plan provides that the members of the board are named fiduciaries to the extent that they carry out those duties. *Id.* The Board is given no responsibilities regarding plan administration or notifying participants of their rights under the Plan. Thus, the Plan did not vest the AHERF Trustees with fiduciary duties related to informing Plan participants of their rights under the Plan and the effect of a partial termination on those rights. The proposed Second Amended Complaint does not allege that the AHERF Trustees were delegated or exercised any authority or responsibility over Plan administration. Accordingly, we will grant the motions to dismiss filed by Cahouet, Brenner, Barnes, Snyder and the other AHERF Trustees.

### (iv) Mellon

Under the Plan, the Trustee is a fiduciary for purposes of managing and controlling Trust assets, "subject to any investment policies, objectives, and guidelines, provided by the Board, and subject to the direction of any Investment Manager" appointed under § 13.1 of the Plan. *Id.* Ex. A § 11.1(e). The Plan does not give the Trustee any responsibilities or discretion with regard to informing Plan participants of their rights under the Plan and the effect of a partial termination on those rights. Further, not only does the Master Trust Agreement explicitly divest Mellon of administering the Plan, but the only discretion that confers upon Mellon concerns the protection of the Plan's assets held in trust and services ancillary thereto. The proposed Second Amended Complaint does not allege that Mellon otherwise exercised or was delegated any authority or responsibility over Plan administration. Accordingly, the court will grant Mellon's motion to dismiss.

### b. Misrepresentations or Material Omissions by Kasperbauer

Because plaintiffs have sufficiently alleged that Kasperbauer was an ERISA fiduciary for purposes of informing participants about their rights under the Plan, we must now consider whether plaintiffs have sufficiently pled any material misrepresentations of omissions on his part.

 Plan administrators have a fiduciary duty to refrain from making "material misrepresentations and incomplete, inconsistent or contradictory disclosures." *Unysis I,* 57 F.3d at 1264. Furthermore, a fiduciary has an affirmative duty to speak when silence might be harmful to plan participants. *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12

F.3d 1292, 1300 (3d Cir.1993). This duty encompasses material facts "known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." *Glaziers*, 93 F.3d at 1182.

■ Liability attaches to an ERISA fiduciary where its misleading statement or omission is substantially likely to mislead a reasonable beneficiary in making an adequately informed employment or retirement decision. *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir.2000) (citation omitted). It is an issue for the trier of fact if reasonable minds can differ as to whether the misleading statement or omission would affect a reasonable employee's decision. *Id.* (citing *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.1993)).

In the instant case, Kasperbauer's alleged misrepresentation or omission is the failure to warn Plaintiffs of the effects of a partial termination upon their right to benefits. *See* proposed Second Amended Compl. ¶¶ 105 & 117 (stating that Kasperbauer made material misrepresentations through Plan Brochure and SPD and failed to warn participants about effects of termination). The only specific misrepresentations or omissions alleged are: (1) the sentence in the 1997 SPD stating that participants rights would vest upon termination regardless of how many years of service they had, without mentioning that participants with less than five years of service became vested only to the extent that there were sufficient funds remaining; (2) the absence of any mention of the effect of termination upon participants rights in the Plan Brochure; and (3) PBGC's role.

With regard to the content of the SPD, the court cannot say as a matter of law that the statement that participants would vest in their accounts upon termination regardless of how many years of service they had completed, without advising participants that they only received a vested right to those accounts to the extent funded, is not a "material misrepresentation" or "incomplete, inconsistent or contradictory disclosure." A factfinder could reasonably conclude based on the unqualified statement in the SPD that participants who had not otherwise vested could reasonably expect to receive the value of their account upon termination, regardless of whether the Plan was adequately funded. *See Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1016 (3d Cir.) (denying summary judgment where there was factual issue as to whether alleged omission was material); *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.1993) (stating that summary judgment on question of materiality is only appropriate if reasonable minds cannot differ). Further, in light of the conclusion that the disclosures in the SPD may qualify as incomplete disclosures, the court cannot say that as a matter of law that the lack of information regarding Plan termination in the Plan Brochure was not also a material omission. The repeated statements, contained elsewhere in these materials, that participants vested only after they had completed five years of service do not as a matter of law preclude recovery based on the alleged misrepresentations and/or omissions regarding plan termination.

We reach the same conclusion with regard to statements in the SPD and Plan Brochure that plaintiffs claim led them to believe that they had individual accounts and a nonforfeitable right to the funds in those accounts. Although the SPD unambiguously explained that the accounts were only hypothetical and that participants' benefits were pooled in a single trust account, the Plan Brochure did not contain such an explanation and describes participants' interests in the Plan as individual "accounts" which they "own." *See In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 242 F.3d 497, (3d Cir.2001).

We cannot, however, discern any inaccuracy in the SPD's discussion about the role of PBGC upon termination. The alleged misrepresentation concerning the role of PBGC is the statement that "PBGC guarantees vested benefits at the level in effect on the date of Plan termination." (First Amended Compl. Ex. B at 24.) However, these plaintiffs are indisputably not entitled to benefits under the explicit terms of the Plan. Thus, the statement in the SPD is in no way inaccurate; because plaintiffs vested only to the extent funded as of the date of partial termination and because the Plan was not sufficiently funded to pay any benefits to plaintiffs on that date, plaintiffs did not vest in any PBGC guaranteed benefits. Further, the SPD clearly states that PBGC guaranteed "most vested . . . benefits" but "does not guaranty all types of benefits under covered plans." *Id.* at 24–25. Accordingly, plaintiffs claim against Kasperbauer for breach of fiduciary duty cannot rest on the statements concerning the role of PBGC.

### c. Knowledge of Confusion Created

The defendants do not challenge the proposed Second Amended Complaint on the basis that it fails to sufficiently allege that Kasperbauer was aware of the confusion created by the alleged misrepresentations or omissions contained in the Plan Brochure or the SPD. Count II does allege that the defendants named in it, including Kasperbauer, knew that plaintiffs had been promised fully funded individual accounts that would vest upon termination and be guaranteed by PBGC. (Proposed Second Amended Compl. ¶ 152.) Although Count I does not explicitly allege such knowledge, the allegations in Count I and throughout the rest of the proposed Second Amended Complaint, if true, can reasonably support an inference that Kasperbauer was aware of Plan participants' misunderstanding as to the scope of their

rights to retirement benefits upon termination. Accordingly, the proposed Second Amended Complaint adequately alleges that Kasperbauer knew of the confusion created.

### d. Resulting Harm to Plaintiffs

Kasperbauer does contend, however, that the proposed Second Amended Complaint fails to sufficiently plead a causal connection between the alleged misrepresentations or failure to warn and plaintiffs' injuries. Rather, it only states that plaintiffs were entitled to rely on Kasperbauer's misrepresentations that they would receive benefits upon termination, and as a result of these misrepresentations they were damaged. Specifically, plaintiffs contend that:

> Plaintiffs' allegations of causation could not be more straightforward. Here, Plaintiffs accepted employment with AHERF in exchange for certain salaries and benefits. A portion of those benefits was explained in the Plan Brochure, the SPD, and in Plaintiffs' account statements. Plaintiffs now find that those benefits are less than what was represented to them.

(Pls.' Resp. to Kasperbauer Mot. for Summ. J. at 18.) Plaintiffs then cite *In re Unisys* for the proposition that "[i]t is hard to envision a clearer connection between the misrepresentations and the resulting harm to the Plaintiffs." *Id.* (citing *Unisys I*, 57 F.3d at 1265).

Plaintiffs correctly point out that causation, not detrimental reliance, is an element of an ERISA breach of fiduciary duty claim. (Resp. to Kasperbauer Mot. To Dismiss at.) However, in the context of a claim that material misrepresentations or omissions regarding Plan benefits constituted a breach of fiduciary duty, it appears that the requisite allegations of causation would be nearly identical in substance to allegations constituting detri-

mental reliance. The Third Circuit has held that to recover on a claim of breach of fiduciary duty based on material misrepresentation, the beneficiary-plaintiff must have acted upon the misrepresentation or omission to his or her detriment. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir.2000); *Unisys I*, 57 F.3d at 1264; *see In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 242 F.3d 497, 507–09 (3d Cir.2001) (characterizing causation element in breach of fiduciary duty though misrepresentation claim as detrimental reliance in, *inter alia*, retirement and insurance decisions). This formulation of causation goes hand in hand with the definition of what constitutes a material misrepresentation or omission, i.e., one that is substantially likely to mislead a reasonable beneficiary in making an adequately informed employment or retirement decision. *Harte*, 214 F.3d at 452; *Adams*, 204 F.3d at 492. Thus, in the context of a breach of fiduciary duty claim premised on a misrepresentation or omission, it is difficult to conceive of any type of causation other than some kind of detrimental reliance by the plan beneficiary.

 However, as already noted with regard to plaintiffs' claim of equitable estoppel, the proposed Second Amended Complaint fails to allege that plaintiffs relied upon any of the alleged misrepresentations or omissions in the SPD or Plan Brochure. Count I the Proposed Second Amended Complaint only asserts that:

> Plaintiffs were entitled to rely on the statements made by these defendants in the Plan Brochure and the SPD....

The foregoing representations were false and misleading when made, causing damage to the plaintiffs. Plaintiffs received less compensation and benefits for being employed at AHERF than they were led to believe they would receive.

(Proposed Second Amended Compl. ¶¶ 144 & 145.) Count II alleges no type of harm or reliance at all, stating only that the defendants' failure to warn constituted a breach of their ERISA fiduciary duties, thus obligating them to make restitution to plaintiffs and the Plan for losses sustained. *However, because plaintiffs had no right to benefits under the Plan and could not have taken any action prior to termination to become entitled to benefits, they cannot allege that they have been deprived of plan benefits because they took some action reducing or forfeiting their rights to Plan benefits that they otherwise would have had.* It is not enough to allege a " 'mere expectation' that certain benefits will materialize; action must have been taken in reliance on ... expectations formed after reading the Plan summary" or the Plan Brochure. *Mauser v. Raytheon Co. Pension Plan*, 239 F.3d 51, 55 (1st Cir.2001) (addressing claim based on violation on ERISA disclosure requirements) (citing *Bachelder v. Communications Satellite Corp.*, 837 F.2d 519, 523 n. 6 (1st Cir.1988)). Plaintiffs' proposed Second Amended Complaint appears to allege only *an expectation* that benefits would materialize. It simply does not allege facts that, if true, would constitute any form of reliance on that expectation.[23] In

---

**23.** The Third Circuit recently held that recovery on a breach of fiduciary duty claim based on misrepresentations or material omissions is not, as a matter of law, limited to situations where the alleged resulting harm is a voluntary decision to retire made in reliance on a mistaken view as to the scope of benefits to which the plaintiff is entitled under a retirement plan. *Unisys III*, 242 F.3d at 507–08

(reversing district court's issuance of summary judgment against all plaintiffs unable to prove a voluntary decision to retire based on alleged misrepresentations). Thus, it is possible that other types of reliance by the instant plaintiffs could satisfy the resulting harm element of a breach of fiduciary duty claim. However, despite another opportunity to

addition, plaintiffs cite no authority for the proposition that the creation of a false belief in an entitlement to benefits can constitute resulting harm in the absence of some detrimental reliance or other action taken as a result of that false belief.[24]

Finally, we find it telling that, despite the defendants' arguments that the First Amended Complaint failed to adequately allege resulting harm or reliance, the proposed Second Amended Complaint contains no new allegations or assertions in response to those arguments. Once again, we are constrained to find that any further attempt at amendment would be futile.

For all of these reasons, Counts I and II of the proposed Second Amended Complaint fail to state a claim upon which relief can be granted. The court need not reach the other arguments raised by defendants in support of their motions to dismiss or their oppositions to the motion to amend, and need not address plaintiffs' claim for attorneys' fees.

## IV. CONCLUSION

For the reasons discussed above, plaintiffs' motion to file a second amended complaint will be denied as futile; Mellon's, Kasperbauer's, the AHERF Trustees', PBGC's, Cahouet's, McConnell's, Brenner's, Barnes' and Snyder's respective motions to dismiss plaintiffs' first amended complaint for failure to state a claim will be granted; plaintiffs' motion for class certification will be denied as moot.

### ORDER

The motion of defendant Mellon Bank, N.A. to dismiss the complaint for failure to state a claim (Docket Entry 11) is GRANTED.

The motion of defendant Dwight Kasperbauer to dismiss the amended complaint (Docket Entry 12) is GRANTED.

The motion of defendants William F. Adam, Dorothy McKenna Brown, Douglas D. Danforth, Ronald R. Davenport, Harry R. Edelman III, Robert L. Fletcher, Ira J. Gumberg, Robert M. Hernandez, Francis B. Nimick, Robert B. Palmer, and David W. Sculley to dismiss the amended complaint (Docket Entry 32) is GRANTED.

The motion of defendant Pension Benefit Guarantee Corporation to dismiss the amended complaint (Docket Entry 36) is GRANTED.

The motion of defendant David C. McConnell to dismiss the amended complaint (Docket Entry 38) is GRANTED.

The motion of defendant Frank V. Cahouet to dismiss (Docket Entry 39) is GRANTED.

The motion of defendant J. David Barnes to dismiss (Docket Entry 46) is GRANTED.

The motion of defendant Ralph W. Brenner to dismiss the amended complaint (Docket Entry 47) is GRANTED.

The motion of defendant W.P. Snyder III to dismiss the amended complaint (Docket Entry 51) is GRANTED.

The First Amended Complaint is DISMISSED with prejudice for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

The motion of plaintiffs William H. Burstein, et al to file a second amended complaint (Docket Entry 82) is DENIED AS FUTILE.

---

plead such reliance in the proposed Second Amended Complaint, Plaintiffs fail to do so. Accordingly, we find any further attempt at amendment would be futile.

24. The court's conclusion regarding causation applies also to the defendants named in Counts I—V besides Kasperbauer.

Plaintiffs' motion for class certification (Docket Entry 81) is DENIED AS MOOT.

The motion of defendants Scully et al for leave to reply to plaintiffs' response to show cause order (Docket Entry 85) is DENIED AS MOOT.

The motion of defendant Kasperbauer for leave to join in defendants' motion for leave to reply to plaintiffs' response to show cause order (Docket Entry 87) is DENIED AS MOOT.

The motion of plaintiffs for removal of case from temporary assignment to the Western District of Pennsylvania, to establish dates for completion of discovery and for trial (Docket Entry 107) is DENIED AS MOOT.

IT IS SO ORDERED.