**Karl E. GRUNEWALD, M.D.,**
**et al., Plaintiffs,**

v.

**Dwight P. KASPERBAUER,**
**et al., Defendants.**

**No. CIV.A.05–1273**

United States District Court,
E.D. Pennsylvania.

May 30, 2006.

Benjamin J. Hinerfeld, Jay W. Eisenhofer, Michelle T. Wirtner, Peter B. Andrews, Sidney S. Liebesman, Grant & Eisenhofer, P.A., Wilmington, DE, Mark J. Krum, Philadelphia, PA, for Plaintiffs.

Amy E. Pizzutillo, John F. Schultz, Kristofor T. Henning, Morgan Lewis & Bockius LLP, Janine Connell, Elizabeth S. Fenton, Kenneth M. Kolaski, Reed Smith LLP, Philadelphia, PA, David L. Mc Clenahan, Joseph Leibowicz, Kirkpatrick & Lockhart Nicholson Graham LLP, Courtney C.T. Horrigan, James J. Restivo, Jr., Perry A. Napolitano, Reed, Smith, Shaw & McClay, David J. Laurent, Babst Calland Clements & Zomnir, Pittsburgh, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. BACKGROUND

This long and complicated ERISA dispute may be on its way to a resolution. The case

began in 1998 when five former employees of the Allegheny Health, Education and Research Foundation ("AHERF")[1] brought suit to recover benefits that they thought had accrued through AHERF's retirement account plan. The five employees also sought to represent a class of similarly situated persons. The defendants in the case were the plan itself, the Pension Benefit Guaranty Corporation ("PBGC"), Dwight Kasperbauer (the plan administrator), David McConnell (the plan asset manager), AHERF trustees, and Mellon Bank (the plan custodial trustee). The amended complaints include eleven counts, which could be broken down into three categories: claims for plan benefits against the plan and PBGC, equitable estoppel, and breach of fiduciary duty against the alleged plan fiduciaries.

The gravamen of the complaint is that plaintiffs were led to believe that the AHERF retirement account plan was a fully-funded retirement contribution plan with certain sums of money set aside for them in individual accounts, when in fact, the plan was a "cash balance plan." A cash balance plan is a defined benefit plan under ERISA where contributions are placed in a trust containing hypothetical, individual employee balances. A cash balance plan must be funded only for the participants whose benefits had vested prior to the plan's (partial) termination. The employees alleged that they were deceived into thinking that the plan was a fully-funded retirement contribution plan because of alleged ambiguities in the plan documents distributed to the employees, as well as other misrepresentations made by the plan fiduciaries.

The dispute arose in 1998 when AHERF sold numerous medical facilities and subsequently sought bankruptcy protection. These occurrences constituted a partial termination under the plan. AHERF employees were informed that under the plan, any person who completed less than five years of service with AHERF was not entitled to any benefits as their benefits had not vested, and thus, were not funded.

After a written opinion by the late District Judge Charles Weiner, *Burstein v. Retirement Account Plan for Employees of Alle-*

*gheny Health, Educ. & Research Found.*, 263 F.Supp.2d 949 (E.D.Pa.2002), an appeal to the Third Circuit, 334 F.3d 365 (3d Cir.2003), and a decision by District Judge Weiner on remand, Civ. A. No. 98–6768, 2004 WL 2612162 (E.D.Pa. Oct.21, 2004), the case evolved into one very different than how it had started. What started as an eleven-count ERISA complaint with the potential for significant liability and damages was dwindled down to one count of breach of fiduciary duty for misrepresentation against one defendant, the plan administrator Kasperbauer. On remand, Judge Weiner also denied class certification on the sole misrepresentation claim.

These decisions triggered a flurry of activity as plaintiffs' counsel scrambled to rekindle their case that they had been litigating for approximately seven years. Beginning in 2005, because class certification was denied on the misrepresentation claim against Kasperbauer, counsel responded by filing 37 individual actions. The complaints included not only the misrepresentation claim against Kasperbauer, but also two additional ERISA breach of fiduciary claims against Kasperbauer, McConnell, and the trustees. Defendants responded by filing motions to dismiss on all three claims, as well as a motion for summary judgment on the single remaining misrepresentation claim in the *Burstein* case. Plaintiffs then sought to revive their class action by filing a motion for certification under *Grunewald v. Kasperbauer*, 05–1273, the case now before the Court.

No decisions were made on the various dispositive motions as settlement negotiations, with the assistance of Judge Weiner, began to gain some traction in the latter months of 2005. As of October 2005, the parties agreed in principle to a settlement of the claims of approximately 500 plaintiffs represented by class counsel for $1.85 million. The settlement, however, deteriorated as the parties, while in agreement on the dollar amount, could not reach agreement on various other terms, particularly the release provision.

Unfortunately, Judge Weiner thereafter passed away. The case was transferred to

---

1. AHERF operated hospitals and health-care fa-          cilities in Pennsylvania.

the docket of this Court on December 7, 2005. On December 16, 2005 the Court received a letter from class counsel indicating that the parties were close to settlement of the case on a class-wide basis, which would resolve the claims of over 5000 putative plaintiffs.

After approximately six months of negotiations, the matter is now before the Court on plaintiffs' motion for class certification of the settlement class, preliminary approval of the settlement agreement, and consolidation and stay of all related actions. Defendants submitted a brief in support of plaintiffs' motion.

A summary of the terms and conditions of the class-action settlement agreement follows. The class is defined as:

> All current or former employees of AHERF or any AHERF Entity who were participants in the Plan at any time prior to November 10, 1998, and who at the time of the Plan's partial termination on November 10, 1998, had less than five years of credited services (as defined in the Plan).

Defendants' insurer is to make a one-time settlement payment of $1.85 million to the putative class.[2] Class counsel is permitted to withdraw money on an as-needed basis solely to pay the costs of notice and administration. Class counsel may submit a motion for attorneys' fees and reimbursement of expenses, which will be evaluated by the Court. In exchange for the settlement payment, the parties mutually release each other from liability relating to the retirement account plan, the claims in the complaints filed in this action (or any claims that relate to said complaints or could have been brought in the complaints), and any insurance or indemnity that may apply to any of the claims. Additionally, putative class members are given the option to opt-out or to object to the fairness, adequacy, and reasonableness of the settlement.

The sum of $1.85 million (minus fees and costs) will be distributed proportionally among class members who do not exclude themselves from the settlement. The distributions will be based upon the number of valid claim forms that class members submit and the class members' individual plan account balances at the time of the plan's termination. According to the long-form notice, the settlement is expected to provide approximately $1.1 million (after fees and costs) for distribution among potentially 5,003 class members. Based upon valid submissions by all of the 5,003 class members, class members will recover approximately $.04241 per dollar in their individual plan accounts, which equates to individual recoveries ranging from $23 to $2,269. The recoveries for the individual class members that submit valid claim forms will increase if fewer than the 5,003 class members submit claims.

The parties also disclosed that they have reached a conditional settlement agreement with all of the putative class members represented by class counsel (587 of them), including the individual named plaintiffs in each of the 38 related cases (doc. no. 45). The individual settlement agreement is conditioned upon the Court's rejection of the proposed class-wide settlement or if the class-wide settlement otherwise fails to become effective. In other words, the parties have reached an agreement to "serve as a back-up" should the class-action settlement fail to obtain final judicial approval. (Indiv. Settlem't Agr. 13.)

According to the individual settlement agreement, defendants will make a one-time settlement payment of $1.85 million. Plaintiffs' counsel has represented that if the individual settlement agreement is triggered, then the $1.85 million will be distributed proportionally among the 587 putative class members represented by class counsel, according to their individual plan account balances at the time of the plan's termination. According to plaintiffs' counsel, the 587 putative class members will recover the same amount regardless of whether the matter is settled on a class-wide basis or pursuant to the individual settlement agreement.

The Court has thoroughly examined the proposed class-action settlement agreement, as well as the other submissions made by the parties, and after holding a hearing on plain-

---

**2.** The $1.85 million is being paid from defendants' fiduciary liability insurance policy. The policy limit is $15 million. According to the insurer it has advanced defense costs of $2,202.053.17, subject to a reservation of rights, with additional pending requests of over $100,000.

tiffs' motion for class certification of the settlement class, preliminary approval of the settlement agreement, and consolidation and stay of all related actions, the Court makes the following findings.

## II. PROVISIONAL SETTLEMENT CLASS CERTIFICATION

### A. *Certification of a Settlement Class*

■ It is well-settled that the court may certify a class for settlement purposes only, *provided that the court engages in a Rule 23(a) and (b) inquiry. In re Community Bank of N. Va.,* 418 F.3d 277, 299 (3d Cir. 2005) (emphasis added); *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 786 (3d Cir.1995) ("*G.M. Trucks*"). The late Judge Edward R. Becker was definitive in *G.M. Trucks* that a class, even if for the purposes of settlement, must meet the requirements of Rule 23:

> [W]e conclude that Rule 23 permits courts to achieve the significant benefits created by settlement classes so long as these courts abide by all of the fundaments of the Rule. Settlement classes must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation, as well as the relevant 23(b) requirements, usually (as in this case) the (b)(3) superiority and predominance standards. We also hold that settlement class status (on which settlement approval depends) should not be sustained unless the record establishes, by findings of the district judge, that the same requisites of the Rule are satisfied. Additionally, we hold that a finding that the settlement was fair and reasonable does not serve as a surrogate for the class findings, and also that there is no lower standard for certification of settlement classes than there is for litigation classes. But as long as the four requirements of 23(a) and the appropriate requirement(s) of 23(b) are met, a court may legitimately certify the class under the Rule.

*G.M. Trucks,* 55 F.3d at 778.

■ It is also well-settled that, while a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The settlement is relevant in that "a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Community Bank,* 418 F.3d at 299 (quoting *Amchem Prods.,* 521 U.S. at 620, 117 S.Ct. 2231). However, "other specifications of the Rule-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context." *Id.* (quoting *Amchem Prods.,* 521 U.S. at 620, 117 S.Ct. 2231); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 314 (3d Cir.1998).

In sum, the court need not be concerned with trial management issues in the settlement context and the court may take the terms of the proposed settlement into consideration, but under no circumstances may the settlement context of the case relieve the court's focus "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Community Bank,* 418 F.3d at 299 (quoting *Amchem Prods.,* 521 U.S. at 621, 117 S.Ct. 2231).

### B. *Rule 23(a): Numerosity, Commonality, Typicality, and Adequacy*

To be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id.* at 302.

■ As to the numerosity component, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 227 (3d Cir.2001). "[C]lass size need only be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 467 (E.D.Pa.2000). In the instant case, the proposed class exceeds 5,000 members. Thus, numerosity is established.

■ The commonality requirement is satisfied if the named plaintiffs share at least

one question of fact or law with the grievance of the purported class. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). "Because the requirement may be satisfied by a single common issue, it is easily met . . . ." *Fry*, 198 F.R.D. at 467. In this case, whether the actual funding of the plan was contrary to the alleged representations made to the employees establishes the commonality requirement.

■ The typicality requirement "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Baby Neal*, 43 F.3d at 57. Cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of varying fact patterns underlying individual claims. *Id.* at 58. In the instant case, the same conduct-Kasperbauer's alleged misrepresentations and the under-funding of the plan-serves as the basis for the individual and class claims. Thus, the typicality requirement is met.

■ The adequacy requirement requires that no conflict exists between the named plaintiffs and the class members, and that class counsel is qualified to conduct the class litigation. *Community Bank*, 418 F.3d at 303. The adequacy requirement is met as the named plaintiffs, Dr. Karl Grunewald and Dr. Paul Glat, and the class seek the same relief, i.e., recovery of the full amount of the promised benefits. The Court adds that this alignment of interests is not affected by the conditional individual settlement agreement, which would be triggered if the class is not certified. According to plaintiffs' counsel, the named plaintiffs will receive the same recovery regardless of whether the matter is settled on a class-wide basis or pursuant to the individual settlement agreement.

Additionally, the law firm of Grant & Eisenhofer P.A. and co-counsel Mark J. Krum, Esq., as will be discussed later with respect to their appointments as class counsel, are experienced in class-action litigation.

C. *Rule 23(b)(3): Predominance and Superiority*

■ In addition to the four requirements of Rule 23(a), the class must also fit within one of the three categories of class actions set forth in Rule 23(b). *Community Bank*, 418 F.3d at 302. In the instant case, the parties contend that the class falls within Rule 23(b)(3). To meet the requirements of Rule 23(b)(3), the district court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). "The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Community Bank*, 418 F.3d at 308–09.

■ This case is unique in that class certification was previously denied in a related, although distinguishable, matter. In 2004 Judge Weiner denied plaintiff's motion for class certification in the *Burstein* case because of "serious doubts that common questions of law and fact predominate over individual questions, specifically regarding what information each member of class was exposed to prior to making their employment decisions, and upon which each relied in making their decisions." *Burstein*, 2004 WL 2612162, at *5. Judge Weiner concluded:

> It is clear from the record that the representative plaintiffs received information from sources other than Kasperbauer upon which they may have detrimentally relied. We find, based on the record presented, issues common to the class do not predominate over the factual and legal issues of reliance affecting each individual member of the purported class . . . . As it is clear that proving the detrimental reliance element will involve factual disparities among the putative class members and thus prevent issues that preclude litigation as a class, we deny the motion for class certification.

*Id.* at *6.

While instructive, Judge Weiner's decision in *Burstein* is not dispositive of the instant motion for class certification in *Grunewald* because the instant motion is brought under different circumstances. In addition to the

misrepresentation claim against Kasperbauer that was before Judge Weiner in *Burstein,* the instant action advances two additional theories of liability that were not present at the time of the *Burstein* Court's denial of class certification. In *Burstein,* only a single fiduciary misrepresentation claim remained against Kasperbauer and that claim required proof of detrimental reliance. In the instant matter, there are two additional counts: breach of fiduciary duty against Kasperbauer and McConnell for failure to adequately fund the plan (Count II), and breach of fiduciary duty against the trustees for failure to enforce plaintiffs' rights to benefits by, among other things, failing to monitor and supervise Kasperbauer and McConnell. The parties argue that neither of these additional claims require proof of detrimental reliance, but merely require a causal nexus between the breach of fiduciary duty and the damages.

The Court finds that, in light of the additional allegations which do not require a

3. The parties also argue that Judge Weiner's ruling only denied class certification for litigation purposes only, and now, because the class is before the Court in a settlement context, the result should be different for that reason. *See Burstein,* 2004 WL 2612162, at \*6 (denying class certification as "proving the detrimental reliance element will involve factual disparities among the putative class members and thus prevent issues that *preclude litigation as a class*") (emphasis added).

The parties point to the case of *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004), for support. In *Warfarin,* the parties sought class certification of a single nationwide class for the purposes of settlement. *Id.* at 529. The class alleged claims under state consumer and antitrust laws of all fifty states. *Id.* The Third Circuit held that the variations in the states' laws did not defeat the commonality and predominance requirements in the settlement context because the state-law distinctions impact trial manageability, which is relevant only in the litigation context. *Id.* at 529–30.

In these circumstances, the Court rejects the parties' argument that the predominance inquiry is altered by the settlement context. The Supreme Court in *Amchem Prods.* and the Third Circuit in *Community Bank* were clear in discussing the relevance of settlement to class certification:

Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other

showing of detrimental reliance, the common issues of the class predominate over the individual issues of reliance. The Third Circuit recognized in *Prudential* that the existence of a single cause of action requiring reliance does not control a predominance determination where "most of plaintiffs' claims do not even involve a reliance element." *Prudential,* 148 F.3d at 314. With the expansion of the case to now include two causes of action that do not require a showing of detrimental reliance, there is now a proposed class before the Court that is "sufficiently cohesive to warrant adjudication by representation." *Community Bank,* 418 F.3d at 308–09.[3]

■ Lastly, under Rule 23(b)(3), the class must satisfy the test for superiority. To do so, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Prudential,* 148 F.3d at 307–08.[4]

specifications of the Rule-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context.

*Community Bank,* 418 F.3d at 299 (quoting *Amchem Prods.,* 521 U.S. at 620, 117 S.Ct. 2231).

The issue of detrimental reliance, as interpreted by Judge Weiner, does not pose merely an "intractable management problem[]," which is not relevant in the settlement context, as was the case in *Warfarin.* Rather, in the instant case, the factual disparities among the class members with respect to detrimental reliance goes directly to the purpose of Rule 23 to "protect absentees by blocking unwarranted or overbroad class definitions," which "demand undiluted, even heightened, attention in the settlement context." *Community Bank,* 418 F.3d at 299 (quoting *Amchem Prods.,* 521 U.S. at 620, 117 S.Ct. 2231). Nevertheless, class certification is now appropriate, regardless if the certification was before the Court in a settlement or litigation context, for the reasons discussed above.

4. "The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action." Fed.R.Civ.P. 23(b)(3).

In this case, the efficiency of the class action is superior to the economic and logistical difficulties of litigating hundreds of individual suits. Additionally, plaintiffs' counsel is unaware of any other litigation initiated by individual putative class members besides the matters before this Court. At this juncture of the case, class action appears to be the only method of recovery for the large majority of the proposed class.

In sum, the proposed class meets all of the requirements of Rule 23. Thus, the Court finds that conditional certification of the settlement class is appropriate.

## III. PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Rule 23(e)(1)(A) states, "A class action shall not be dismissed or compromised without approval of the court . . . ." In order for a court to grant approval of a class-action settlement, the court must determine whether the proposed settlement is "fair, adequate, and reasonable." *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F.Supp.2d 561 (E.D.Pa.2001) (quoting *Prudential,* 148 F.3d at 316).

The Third Circuit in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975), identified nine factors which the court should consider in determining whether a proposed settlement agreement is fair, adequate, and reasonable. The Third Circuit supplemented the *Girsh* factors with six additional considerations in *Prudential,* 148 F.3d at 323.

> Distilled to their essence, *Girsh–Prudential* compels courts to obtain satisfactory answers to the following questions:
> 1. What benefits did the litigation confer upon the putative class members either by way of financial compensation or by injunctive relief?
> 2. What past, present or future claims are surrendered by the class members by settling the case?
> 3. Do the administrative costs, including attorneys fees, reflect the market value of services performed and are they commensurate with the results achieved?
> 4. Are the terms of the Settlement Agreement consistent with the public interest and is the public's confidence in the administration of justice and integrity of

the class action process enhanced or impeded by the settlement?
> 5. What are the prospects that, if the Settlement Agreement is rejected, further litigation would enlarge the recovery of the class and, if so, at what financial cost?

*Schwartz,* 157 F.Supp.2d at 572.

In this case, upon preliminary review, the Court is satisfied that the proposed settlement is fair, adequate, and reasonable. As to the first question, the benefits to the class from the settlement are meaningful. Under the terms of the agreement, the class members will receive monetary compensation of $1.85 million (minus fees and expenses)-a welcomed recovery particularly in light of AHERF's bankruptcy. This sum will be distributed proportionally among class members who do not exclude themselves from the settlement, based upon the number of valid claim forms that class members submit and the class members' individual plan account balances at the time of the plan's termination. Based upon valid submissions by all of the 5,003 class members, class members will recover approximately $.04241 per dollar in their individual plan accounts, which equates to individual recoveries ranging from $23 to $2,269. The recoveries for the individual class members that submit valid claim forms will increase if fewer than the 5,003 of the proposed class members respond.

As to the second question, the claims surrendered in settling this case are limited in scope and time. The settlement only releases defendants from liability relating to the retirement account plan, the claims in the complaints filed in this action (or any claims that relate to said complaints or could have been brought in the complaints), and any insurance or indemnity that may apply to any of the claims. It does not release defendants from claims that are unrelated to the plan or the current claims, including those regarding AHERF's corporate bankruptcy, nor does it release defendants from claims based on future conduct. Additionally, it appears that any new action filed at this point relating to the plan or the current claims would likely be barred by the applicable limitations period.

As to the third question, the administrative costs, including attorneys' fees, are being kept to a minimum. While class counsel has accrued fees in an amount over $3 million, they will be seeking $300,000, which may be awarded at the discretion of the Court. As to costs, class counsel asserts that they will be seeking to recoup approximately $395,000 in costs, the majority of which is from copying. This amount is reasonable in light of the nature of this class action and the path that this case has taken. Nor is a fee sought for the two named plaintiffs to compensate them for time or costs spent in this litigation.

As to the fourth question, the settlement is consistent with the public interest and the public's confidence in the administration of justice and integrity of the class action process is enhanced by this settlement. It is apparent that many of the class members expected no compensation after they were informed that their unvested pensions were not funded and AHERF went bankrupt. For most of the class members, this class action provides some relief when none was expected. Additionally, plaintiffs' counsel has received minimal objection to the settlement. Those that have objected will opt-out, not because they are dissatisfied with the settlement, but because they currently work with many of the defendants and do not think that recovery is worth risking their relations. Additionally, this class-wide settlement, which may compensate approximately 5,000 employees, is preferred as the parties have executed conditional settlements that would provide compensation for only 587 employees if the class-wide settlement is not approved.

As to the fifth question, further litigation would likely decrease the recovery for the class members. Defendants have filed motions to dismiss on all of plaintiffs' claims. Plaintiffs' counsel, who has a firm grasp on the circumstances of this case given the 7.5 years of contested litigation, has conceded that the remaining claims are "tenuous" and continued litigation would pose great risks to any recovery at all. According to class counsel, given the evolution of this case, $1.85 is a considerable recovery for the class, which could only be further depleted by continued litigation.

Before concluding, this case must be distinguished from this Court's prior decision in

*Schwartz*, 157 F.Supp.2d 561. In *Schwartz*, this Court concluded that a class-action settlement of antitrust claims challenging the National Football League's requirement that satellite television viewers purchase all regular season Sunday afternoon games was not fair, adequate, or reasonable. *Id.* at 572. This Court concluded that the settlement was lop-sided, providing defendants broad protection while providing plaintiffs inadequate compensation. *Id.* Essentially, the Court was not willing to accept the notion that given the weaknesses of plaintiffs' claims, "a bad settlement is better than no settlement at all." *Id.*

The case now before the Court is very different. In 7.5 years of litigation, including extensive factual discovery and debated legal issues (including a trip to the Third Circuit), the case looks drastically different now than how it began. What started as a case that exposed defendants to extensive potential liability has been transformed into three "tenuous" claims of breach of fiduciary duty with only a limited pool of money available for recovery. Through extensive and hard-fought negotiations, plaintiffs' counsel has managed to salvage $1.85 million (minus fees and costs) for the settlement class, a considerable recovery in light of the evolution of the case and AHERF's bankruptcy. That amount will only be further depleted by continued litigation. The release was also carefully crafted such that it is limited in time and scope.

In sum, while it is anticipated that class members will receive approximately a mere $.04241 per dollar in their individual plan accounts, this is not a case where plaintiffs' counsel started with a rather weak case, like *Schwartz*, and urged the Court that "a bad settlement is better than no settlement at all." Rather, plaintiffs' case had potential, but it took a turn for the worse through unfavorable legal decisions of previously unsettled law and a depletion of potential available funds for recovery because of AHERF's bankruptcy-circumstances which were beyond plaintiffs' control.

The Court thus concludes that, upon preliminary review, a recovery of $1.85 million is fair, adequate, and reasonable.

## IV. NOTICE

██ Rule 23(c) describes the notice to class members when a court certifies a class, while Rule 23(e) describes the notice required for settlement. In this case, where the parties seek to simultaneously certify a settlement class and settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement). *See, e.g., Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 90–91 (3d Cir. 1985).

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). "The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3)." *Id.*

██ In this case, the class-action administrator will mail individual long-form notices to class members with available addresses (approximately 2,800 of the 5,003 class members). Also, the short-form notice will be published in the Philadelphia Inquirer, The Courier Post, and the Pittsburgh Post–Gazette. Notice materials will also be published on the internet. The notices will contain the required information. The Court is thus satisfied that the notice provisions of Rule 23 are met.

## V. APPOINTING COUNSEL FOR THE PUTATIVE CLASS

Under Rule 23(g)(1)(B), "a court that certifies a class must appoint class counsel." "An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(C). Additionally,

[i]n appointing class counsel, the court (I) must consider:

1. the work counsel has done in identifying or investigating potential claims in the action,

2. counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

3. counsel's knowledge of the applicable law, and

4. resources counsel will commit to representing the class . . .

Fed.R.Civ.P. 23(g)(1)(C).

██ In the instant case, the Court finds that Grant & Eisenhofer P.A. and Mark J. Krum, Esq., are qualified to "fairly and adequately represent the interests of the class," Fed.R.Civ.P. 23(g)(1)(C). In approximately 7.5 years of litigation, which includes extensive factual discovery and legal disputes that made their way to the Third Circuit, plaintiffs' counsel has attained a firm grasp on the dynamics of this case.

Additionally, both Grant & Eisenhofer P.A. and Mark J. Krum, Esq., have submitted biographies, which outline their experience and accomplishments in handling class-action and complex litigation. Grant & Eisenhofer is a national litigation boutique with 35 attorneys. They concentrate on federal securities and corporate governance litigation and other complex class actions. The firm has served as lead counsel in securities class actions that have amassed over two billion dollars in recoveries, including five of the largest securities class action recoveries in history.

Mr. Krum, a solo practitioner, has an international practice specializing in white collar criminal defense and complex commercial litigation. Mr. Krum has co-represented a class of plaintiffs on at least two other occasions.

## VI. REQUEST FOR CONSOLIDATION AND STAY

The parties have requested consolidation and stay of the 38 individual actions pending final class certification and settlement approval. However, the parties have reached a

conditional settlement agreement with respect to all of the class members represented by class counsel (587 of them), which includes all of the plaintiffs in the 38 individual cases. The individual settlement agreement is conditioned upon the Court's rejection of the proposed class-wide settlement or if the class-wide settlement otherwise fails to become effective. Given that the cases have been settled (either on a class-wide basis or for the 587 class members represented by class counsel under the condition), dismissal, rather than consolidation and stay, is appropriate. The Court will retain jurisdiction for 120 days.

## VII. CONCLUSION

For the foregoing reasons, this action shall be maintained, for settlement purposes, as a class action pursuant to Rule 23. The certification of the class is conditioned on final approval of the settlement, and, in the event the settlement is not approved, the certification shall be vacated. The Court further finds that the proposed settlement agreement is fair, adequate, and reasonable, and said agreement is provisionally and conditionally approved. The agreement shall be submitted to the class members for their consideration and a hearing on final approval will be held by the Court.

### ORDER

**AND NOW**, this **30th** day of **May, 2006**, upon consideration of plaintiffs' motion to certify the settlement class, preliminary approval of settlement, and consolidation and stay of all related actions (doc. no. 38) and defendants' brief in support thereof (doc. no. 42), and based on the reasoning contained in the accompanying Memorandum, it is hereby **ORDERED** that:

1. This action shall be maintained, for settlement purposes, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, with a class defined as follows:

All current or former employees of AHERF or any AHERF Entity who were participants in the Plan at any time prior to November 10, 1998, and who at the time of the Plan's partial termination on November 10, 1998, had less than five years of credited services (as defined in the Plan).

2. This conditionally-certified class action shall be maintained with Dr. Karl E. Grunewald and Dr. Paul Glat as class representatives and with class counsel consisting of the law firm of Grant & Eisenhofer P.A., Chase Manhattan Centre, 1201 North Market Street, Wilmington, DE 19801, and Mark J. Krum, Esq., 237 South 18th Street, 13th Floor, Philadelphia, PA 19103.

3. The certification of the class is conditioned on final approval of the settlement, and, in the even the settlement is not approved, the certification shall be vacated.

4. The Court finds that the settlement agreement, exhibit 1 of the declaration of Michelle T. Wirtner (doc. no. 40), appears, upon preliminary review, to be fair, adequate, and reasonable, and shall be submitted to the class members for their consideration and for a hearing to determine whether the settlement will be approved by the Court.

5. Pursuant to Rules 23(c) and (e), the Court approves of the proposed notice as outlined in the settlement agreement. Notices shall be mailed and published by **June 16, 2006**.

6. A hearing shall be held on **Tuesday, July 25, 2006** at **9:00 a.m.** in Courtroom 11A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, to consider the fairness, reasonableness, and adequacy of the settlement, the fairness of the proposed plan of distribution of the settlement proceeds, the dismissal of the complaint and amended complaints in this action, the request for attorneys' fees, and other related matters:

a. At the hearing, any class member may appear in person or by counsel (if an appearance is filed and served as hereinafter provided) and be heard to the extent allowed by the Court in support of, or in opposition to, the fairness, reasonableness, and adequacy of the settlement, and the plan of distribution, provided, however, that no person shall be heard in opposition thereto and no papers or briefs submitted by an such person shall be accepted or considered by the Court unless, on or before **July 12, 2006**, such person (i) has filed with the Clerk of the Court a notice of such person's intention to appear together

with a statement that indicates the basis of such opposition along with any supporting documentation (including evidence indicating that he or she is a member of the class), and (ii) has served copies of such notice, statement, and documentation together with copies of any other papers or briefs filed with the Court, either in person or by mail, upon the following counsel:

Sidney S. Liebesman, Esq.
Grant & Eisenhofer P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19901
*On behalf of plaintiffs*
Joseph Leibowicz, Esq.
Kirkpatrick & Lockhart Nicholson Graham LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
*On behalf of defendants*

b. Class counsel and defendants' counsel should be prepared at the hearing to respond to any objections filed by class members and to provide other information, as appropriate, bearing on whether settlement should be approved.

7. On or by **July 12, 2006** class counsel shall cause to be filed with the Clerk of the Court affidavits or declarations of the person or persons under whose general direction the mailing of the notice to class members and publication of the notice was accomplished, showing that such mailings and publication have been made in accordance with this Order.

8. Any class member who wishes to be excluded from this settlement class shall send a letter to the post office box designated in the notice for receipt of exclusion requests. To be effective as an exclusion request, the letter must be post-marked no later than **July 12, 2006** and must contain (a) the class member's name, address, and telephone number, and (b) a statement indicating that the sender of the letter wishes to be excluded from the class.

9. Any person who believes that he or she is a member of the class shall be entitled to establish the right to participate in the distribution of the proceeds of the settlement fund, and other aspects of the settlement terms, by filing a proof-of-claim form by **July 12, 2006**, unless extended for good cause shown.

**AND IT IS SO ORDERED.**